**LEE AND MAYFIELD, INC.,**
Appellant-Plaintiff,

v.

**LYKOWSKI HOUSE MOVING ENGINEERS, INC., et al.,**
Appellees-Defendants.

No. 3–385A54.

Court of Appeals of Indiana,
Third District.

Feb. 26, 1986.

Rehearing Denied March 27, 1986.

---

George T. Patten, South Bend, for appellant-plaintiff.

Donald E. Esmont, Doran, Manion, Boynton, Kahn and Esmont, South Bend, for appellee-defendant Lykowski House Moving Engineers, Inc.

Daniel H. Pfeifer, Sweeney & Pfeifer, South Bend, for appellees-defendants John A. Levy, Charles C. Davis, and Timothy E. Mathias.

STATON, Presiding Judge.

Lee and Mayfield, Inc. (Lee) plaintiff, appeals from a partial summary judgment and from judgment for damages on counterclaims filed by the defendants, Lykowski Construction Co. (Lykowski) and John A. Levy, Charles C. Davis and Timothy E. Mathias (Levy). Lee presents five issues for our review:

  I.  Did the trial court err in granting summary judgment to Levy on the issue of Lee's purported "Retainage" Lien?

 II.  Was there sufficient evidence of slander of title?

III.  Was there sufficient evidence that Lee tortiously interferred with the contract between Lykowski and Levy?

 IV.  Was there sufficient evidence to support the trial court's award of damages?

  V.  Was there sufficient evidence to support the trial court's award of attorney fees?

Lykowski Construction Company is in the business of moving buildings. In 1981 Lykowski decided to design a new system of wheel dollies with a weight capacity of 100 tons each for use in its own business as well as for sale or rental to others. Lykowski engaged a design engineer to design the wheel assemblies, perform stress analysis, determine specifications and tolerances, and verify the weight capacity. Lykowski had preliminary discussions in November, 1981, with Lee and Mayfield, Inc., a machine shop, regarding the fabrication and machining of certain component parts

of the wheel assemblies. In June, 1982 Lykowski entered into negotiations with Levy, Davis and Mathias, the owners of a structure they desired to relocate to a parcel of property they owned. Southhold Heritage Foundation, Inc., as interim lender and construction manager was also involved in the negotiations. These negotiations resulted in a written contract dated July 12, 1982, under which Lykowski was to receive $30,000.00 in advance, $15,000.00 when the structure was moved to the new site, and $15,000.00 when the job was completed.

In anticipation of the $30,000.00 payment from Levy, Lykowski decided to proceed with building six (6) wheel dollies pursuant to the original design. Lykowski orally agreed with Lee in June, 1982 to a time and materials contract for the machining of certain parts for six wheel dollies and three spare wheels. Lykowski planned to use the wheel dollies initially in the move of Levy's structure and later in moving other structures or for rental to other house movers.

As the work progressed Lykowski complained about defects, the quality of workmanship and the failure to conform to specifications and permitted tolerances. A number of parts were rejected and returned to Lee for reworking. Lykowski employees did some machining when Lee failed to do so. When Lykowski completed assembly of the wheel dollies in preparation for the Levy move, Lykowski employees were forced to "jerry rig" spacer rings because they had been machined smaller than specified. During the move on August 26, 1982 the tires on twelve (12) of the wheel assemblies would not hold air at the required pressure because of a machining defect. On July 22, 1982 Lykowski made an initial payment to Lee of $10,000.00, but because of the dispute over workmanship, Lykowski made no further payments. Due to the dispute between Lykowski and Lee, Levy and Southhold withheld payment of the second and third payments due Lykowski although the move had been completed on September 23, 1982 and accepted by Levy and Southhold.

On September 29, 1982 Lee filed a mechanic's lien [1] for $27,569.88 on the real estate owned by Levy. Thereafter, Lee filed a notice to hold the owners personally liable against Levy.[2] As a result of Lee's mechanic's lien on the real estate, Lykowski filed a lien on the real estate for the remaining $30,000.00 owing to it for the moving job. On December 1, 1982 Lykowski sent notice to Lee to commence suit on the mechanic's lien within thirty (30) days of the correspondence.[3] On February 14, 1983 Lee filed suit against Levy, Lykowski and Southhold seeking, among other things, to foreclose on the mechanic's lien filed September 29, 1982. The trial court subsequently granted summary judgment against Lee on the mechanic's lien, holding it to be null and void for failure to commence suit within 30 days of demand to do so.[4] Lee does not appeal from that judgment.

## I.

### Summary Judgment

Our standard of review for the granting of summary judgment has been stated many times. We apply the same standard as that applied by the trial court and will affirm if the prevailing party was entitled to judgment as a matter of law. *Integrity Insurance Co. v. Lindsey* (1983), Ind.App., 444 N.E.2d 345, 347. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C). The facts here are not in dispute, the only issue is whether the trial court correctly applied the law.

In granting Levy's motion for summary judgment on Lee's owner's liability claim

---

1. IC 32–8–3–1 (Burns Code 1980 Repl.)

2. IC 32–8–3–9 (Burns Code 1980 Repl.)

3. IC 32–8–3–10 (Burns Code 1980 Repl.)

4. *Id.*

under I.C. 32–8–3–9, the trial court held that the provision was not identical to the statutory provision for a mechanic's lien, IC 32–8–3–1, but that the class of individuals entitled to relief under either provision was the same and that Lee was not within the class of person's entitled to the remedy. We agree with the trial court insofar as subcontractors, journeymen and laborers are concerned; however, we note that contractors are afforded the protection of the mechanic's lien provision, but they are not included in the personal liability provision, presumably because a contractor would already have a personal right of action against an owner under the contract.

There appears to be some confusion among the parties on the distinctions between the two statutory provisions. We emphasize that we are not dealing with a mechanic's lien on the real estate, the remedy permitted under IC 32–8–3–1. We are concerned only with IC 32–8–3–9 which allows:

> Any subcontractor, lessor leasing construction and other equipment and tools, whether or not an operator is also provided by the lessor, journeyman or laborer employed or leasing any equipment or tools used by the lessee in erecting, altering, repairing or removing any house ... other building ... or in furnishing any material or machinery therefor, may give to the owner thereof, ... notice in writing particularly setting forth the amount of his claim and services rendered, for which his employer or lessee is indebted to him, and that he holds the owner responsible for the same; and the owner shall be liable for such claim, but not to exceed the amount which may be due and may thereafter become due, from him to the employer or lessee.

The provision preserves for a subcontractor or materialman a right of action against an owner even though the subcontractor has no contract with the owner. There is a conflict among the cases construing this provision and its predecessor provisions as to whether a lien, *per se,* is even created by

giving notice to the owner. A line of early Indiana Supreme Court decisions holds that no lien is intended or created by compliance with the personal liability section. *See Barker v. Buell* (1871), 35 Ind. 297; *O'Halloran v. Leachey* (1872), 39 Ind. 150; *Colter v. Frese* (1873), 45 Ind. 96. The court has viewed the personal liability section as an additional or alternative remedy for persons coming within the scope of the mechanic's lien statute. *Crawford v. Crockett* (1876), 55 Ind. 220. This is particularly persuasive in view of the fact that the contractor and the owner may, by way of a no-lien agreement,[5] foreclose a subcontractor or materialman from acquiring a mechanic's lien on the owner's real estate. In the face of a no-lien agreement a subcontractor may still resort to the personal liability section. *See Nash Engineering Co. v. Marcy Realty Corp.* (1944), 222 Ind. 396, 54 N.E.2d 263.

More recently, however, two Court of Appeals decisions have held that the personal liability section does establish a lien in favor of a subcontractor or materialman who complies with the notice requirements. In *Indianapolis P. & L. Co. v. Southeastern Supply Co.* (1970), 146 Ind.App. 554, 257 N.E.2d 722 the court characterized an action under section 43–709 (now IC 32–8–3–9) as an action to foreclose a mechanic's lien and rejected the contention that it was an attempt to enforce personal liability against the owner. 257 N.E.2d at 732, 733. Judge Sullivan, in a vigorous dissent, thoroughly examined prior case law and concluded that the statutory section in question clearly does not confer lien rights. *Id.* at 736.

Without any discussion of prior case law, the court in *Zeigler Building Materials, Inc. v. Parkison* (1980), Ind.App., 398 N.E.2d 1330 at 1332 stated that the purpose of IC 32–8–3–9 "is to permit a person furnishing services, labor, or materials to a contractor to acquire a lien upon the accounts receivable of the contractor due from the owner." While we agree with the

---

**5.** I.C. 32–8–3–1 (Burns Code 1980 Repl.)

proposition that, in addition to protecting materialmen the statute is designed also to protect the owner so that he may withhold money due a contractor and protect himself against the claims of subcontractors or materialmen who have not been paid, *see Indianapolis P. & L. Co., supra* at 732, we do not agree that a lien is created when such an individual gives notice to an owner. The statute makes no reference whatsoever to a lien and we decline to read one in where none exists. *See In re Hull,* 19 B.R. 501 (N.D.Ind.1982).

■ Although we believe the trial court in the instant case incorrectly viewed the personal liability section as conferring a lien, we are in full agreement that the class of individuals protected by the statute is the same as under the mechanic's lien provision. This is consistent with the rationale that the personal liability section provides an alternate or additional remedy for individuals who may be barred from acquiring a mechanic's lien because of a no-lien agreement between the contractor and the owner, or for whom the mechanic's lien might be inadequate due to prior encumbrances on the property.

■ In determining the class of individuals entitled to take advantage of the mechanic's lien statute the courts have consistently held that because such statutes are in derogation of the common law they must be strictly construed. *Lafayette Tennis Club, Inc. v. C.W. Ellison Builders, Inc.* (1980), Ind.App., 406 N.E.2d 1211, 1213; *Rudd v. Anderson* (1972), 153 Ind. App. 11, 285 N.E.2d 836, 842; *Valley View D. Corp. v. Cheugh & Schlegel of Dayton* (1972), 151 Ind.App. 450, 280 N.E.2d 319, 326. The statutory lien is equitable in nature and based upon the theory of unjust enrichment. *Voorhees-Jontz Lumber Company v. Bezek* (1965), 137 Ind.App. 382, 209 N.E.2d 380, 388. Under earlier versions of the statute the courts held that materials or labor must actually be incorporated into or permanently affixed to a building in order to come within the statute. Thus, in *Potter Mfg. Co. v. A.B. Meyer & Co.* (1909), 171 Ind. 513, 86 N.E. 837 a

trenching machine rented by the contractor did not come within the statute. The present version of the statute, however, extends the lien remedy to the lessors of equipment used for the erection, repair or removal of structures. We are unable to say, however, that the scope of the statute's protection extends to one in Lee's position; that is, one who merely provides parts for equipment belonging to and used by the contractor. Here, even though the equipment happened to be used on a particular job, the contractor did not acquire it nor the supplier supply it solely and exclusively for the benefit of the owner of the property. The Levy moving job motivated Lykowski to go ahead with the production and initial use of equipment which he had already contemplated producing for use in his business and for sale or rental to others. As the trial court noted in its judgment there is little difference between this situation and that of a service station mechanic who performs work on a contractor's truck which he happens to use in his business. Lee was not a subcontractor or supplier within the meaning of IC 32-8-3-9. The trial court did not err in granting summary judgment to Levy on this issue.

## II.

### Slander of Title

■ Lee next argues that Levy failed to prove slander of title in that there was no proof of malice. The essential elements of slander of title are that false statements were made maliciously and that the plaintiff sustained pecuniary loss as a necessary and proximate consequence of the slanderous statements. *Harper v. Goodin* (1980), Ind.App., 409 N.E.2d 1129, 1134. Malice is publishing matter with knowledge that it is false or with reckless disregard as to whether it is false or not. *Cochran v. Indianapolis Newspapers, Inc.* (1978), 175 Ind.App. 548, 372 N.E.2d 1211, 1219. Malice may be inferred by the trier of fact from the evidence. *Display Fixtures Co., Etc. v. R.L. Hatcher* (1982), Ind.App., 438 N.E.2d 26, 30. The trial court found that Lee filed a notice of intention to hold a

mechanic's lien on the real estate owned by Levy. Since Lee was not among the class of persons entitled to claim such a lien, the trial court found that it was filed without just cause, i.e., maliciously, thereby slandering the title of Levy. Moreover, Lee wrongfully filed and maintained an action to foreclose the lien against Levy's real estate although the complaint was filed more than 30 days after valid written notice to commence suit had been served upon Lee by Lykowski, contrary to IC 32-8-3-10. Lee also attended a meeting of the South Bend Common Council and attempted to block the passage of an ordinance necessary for Levy to obtain economic development bond financing for the restoration of the structure. Lee requested that Levy be persuaded to intervene in the dispute between Lee and Lykowski and that the ordinance not be passed until Levy intervened and the dispute was resolved. Although the ordinance was passed in spite of Lee's interference, the South Bend bank which had agreed to purchase the bonds refused to do so because of the mechanic's lien filed by Lee against Levy's property.

■ From these facts the trial court had ample justification for finding that Lee's mechanic's lien was filed without probable cause; that Lee knew or should have known that it was not entitled to claim such a lien; that Lee's actions were designed to force Levy to intervene in Lee's dispute with Lykowski, and therefore, that Lee acted with malice. The fact that Lee's dispute with Lykowski may have been legitimate has no bearing upon the false and malicious nature of Lee's claim against Levy.

### III.

#### Tortious Interference With Contract

■ Lee's third allegation of error is that there was not substantial evidence to show that Lee interferred with Lykowski's contract with Levy and Southhold. In its brief to this court Lee argues that 1) there was no contract, and 2) there was no proof of ill will on the part of Lee. These grounds were not presented to the trial court in the motion to correct error nor discussed in the accompanying memorandum. Indiana Rules of Procedure, Trial Rule 59(D)(2) requires that "each claimed error shall be stated in specific rather than general terms, and shall be accompanied by a statement of facts and grounds upon which the errors are based." Lee merely set out the trial court's Conclusion of Law 3, and alleged there was no evidence to support the conclusion that Lee's pattern of conduct described in the Findings constituted tortious interference with the contract. This allegation of error is insufficient to raise the issue of the lack of a valid contract or the issue of ill will. To find error for reasons not presented to the trial court would violate the purpose of T.R. 59. *Daly v. Nau* (1975), 167 Ind.App. 541, 339 N.E.2d 71, 77. Errors not raised in the motion to correct error are, therefore, waived on appeal. *Orlowski v. City of South Bend* (1985) Ind.App., 482 N.E.2d 1380.

■ Even if Lee had properly preserved these issues for appeal the arguments would fail. The contract is set forth in the record and shows that Southhold contracted with Lykowski on behalf of the partners of General Microcomputer, (Davis, Mathias and Levy). The contract was executed by the executive director of Southhold as well as by Davis and Mathias. Levy's signature was not required to make the contract valid and enforceable.

■ As to Lee's argument that the evidence does not support a finding of malice or ill will, Lee cites no authority for the claim that malice is an element of interference with contract and has, therefore, waived the argument. Rules of Appellate Procedure, A.R. 8.3(A)(7); *Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, 350.

### IV.

#### Damages

Next, Lee claims there was insufficient evidence to support the trial court's award of damages. For Lee's tortious interfer-

ence with Lykowski's contract the court awarded Lykowski $5,102.43 for loss of use of the second and third payments withheld by Levy because of the Lee-Lykowski dispute. This was calculated at 8% per annum from the dates the payments were due. The court also awarded attorney fees to Lykowski on the interference with contract claim. These will be discussed below under Issue V.

▆▆ The measure of damages for wrongfully inducing a breach of contract is compensation for the loss incurred. *Daly v. Nau* (1975), 167 Ind.App. 541, 339 N.E.2d 71, 78. It is undisputed that Levy withheld the final two payments to Lykowski as a result of Lee's actions and that the total of $30,000.00 remainded unpaid at the time of judgment. When reviewing a court's award of damages such award will not be overturned unless grossly excessive. *Freiburger v. Fry* (1982), Ind.App., 439 N.E.2d 169, 174. We find no error in the court's award of damages on this issue.

For defective workmanship the trial court held that Lee was entitled to be compensated for the reasonable value of its services which, less Lykowski's $10,000.00 payment, was $25,693.88. Against that sum Lykowski was allowed to offset $5,173.57, raw material costs for parts which have to be replaced; $5,000.00, for labor for machining new parts and remachining defective parts; and $7,440.00 for additional labor costs incurred by Lykowski employees as a result of Lee's defective work. The raw materials award was supported by testimony of Lee regarding the original cost of the materials in 1982. Lee testified that these costs would be higher today. As to any salvage value of parts which were unusable, Lee presented no evidence and since Lee was awarded its costs for materials and labor, Lykowski has "paid" Lee for these parts anyway.

▆▆ Experts testified that the labor costs, at the industry standard of $20.00 per hour, for machining new and remachining defective parts would range between an estimated $5,000.00 and $5,280.00. The court's award of $5,000.00 was, therefore, within the scope of the evidence presented. *See Colonial Discount Corp. v. Berkhardt* (1982) Ind.App., 435 N.E.2d 65. Tim Lykowski testified at length regarding the problems encountered due to Lee's defective workmanship. He testified that he and his employees spent a total of 372 hours assembling, dismantling, inspecting, filing, grinding, reassembling and transporting the various parts. He testified that his labor costs ranged from $20.00 to $25.00 per hour. The court's award of $7,440.00 represents 372 hours at the lower figure of $20.00 per hour—again, well within the evidence. We find ample evidence to support the trial court's award of damages to Lykowski.

▆▆ Levy was forced to obtain alternate financing when a South Bend bank refused, due to Lee's lien, to purchase the economic development bonds. The measure of damages in regard to a breach of contract to loan money is the difference, if any, between the interest the borrower has contracted to pay and what he has been compelled to pay to procure the money. *Downing v. Dial* (1981), Ind.App., 426 N.E.2d 416, 421. Lee's wrongful actions which slandered Levy's title make him liable for damages sustained by Levy. However, Lee argues there was insufficient evidence to support an award of $46,903.20. Tim Mathias testified that the interest payments on the bonds would have been between nine (9) and ten (10) percent. At 10% total interest payments would have been $377,378.40. The financing ultimately obtained was at an interest rate of one percent above prime and had averaged from 13% to 13½%. Using the lower percentage rate of 13%, total interest payments over the ten-year life of the loan would be $424,281.60. The court's award represents the difference between the interest at the highest rate on the bonds and the lowest rate on the loan. Computation of damage awards is within the discretion of the trial court as long as they are within the scope of the evidence. *Smith v. Glesing* (1969), 145 Ind.App. 11, 248 N.E.2d 366, 371. Mathematical certainty is not re-

quired, *Colonial Discount Corp., supra,* at 67 and where there is doubt as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer. *Stoneburner v. Fletcher* (1980), Ind.App., 408 N.E.2d 545, 550. We conclude that the court's award is within the scope of the evidence presented and any uncertainty on the part of Mathias as to the exact rates of interest must be resolved against Lee.

## V.

### Attorney Fees

■■■ The court awarded Lykowski "$3,000.00 representing Lykowski's attorney fees incurred in connection with Lykowski's actions herein against Southhold and Levy which would not have been incurred but for such [Lee's] interference." (Conclusion of Law 3). The court also ordered that Lykowski recover attorney fees in the amount of $3,000.00 from Levy, to be paid from the proceeds of the foreclosure sale resulting from Lykowski's mechanic's lien on Levy's property. The affidavit of Lykowski's attorney, containing a detailed listing of time spent on the case up to the time of trial, showed 97.25 hours at $65.00 per hour for a total of $6,321.25. Only two entries for a total of one half hour appear to have been for unrelated matters. The parties apparently agreed prior to trial that attorneys' fees would be submitted by affidavit and Lee did not object when the affidavit of Lykowski's counsel was admitted into evidence. Since Lee did not object to the admission of the evidence of Lykowski's attorney's fees at trial, we will not entertain on appeal any contentions regarding the correctness or accuracy of that evidence. *Dept. of Public Welfare v. Chapel Pharmacy* (1980), Ind.App., 407 N.E.2d 1211, 1212; *Indianapolis Power & Light Co. v. Southeastern Supply Co.* (1970), 146 Ind.App. 554, 257 N.E.2d 722. Moreover, the trial court's overall award to Lykowski was less than the total fees claimed; therefore, we will presume that the trial court eliminated the possibility of charges for unrelated matters. As to the breakdown of the total fee between Lee and Levy we will defer to the trial court's discretion in determining the amount due from each party unless a manifest abuse of discretion is apparent on the face of the record. *Scott v. Anderson Newspapers, Inc.* (1985), Ind.App., 477 N.E.2d 553, 564; *Zebrowski & Assoc. v. City of Indianapolis* (1983), Ind.App., 457 N.E.2d 259, 264. We find no such abuse.

■■■ We must agree with Lee, however, that the evidence with regard to Levy's attorney fees was insufficient to support the award of $8,400.00 against Lee. The only evidence to which we have been directed in the record is the testimony of Tim Mathias. Mathias stated that he and his partners had paid their attorney $7,200.00 as of June 29, 1984 and expected to owe approximately another $1,200.00 for trial preparation and trial. There was no evidence of the number of hours spent by counsel or the hourly rate charged. A client's mere testimony of what he has been charged by his attorney is inadequate to support an award of attorney's fees. *Peoples State Bank v. Thompson* (1984), Ind.App., 462 N.E.2d 1068, 1073. Therefore, we must remand this case for a hearing on the reasonableness of Levy's attorney fees.

Judgment of trial court is affirmed and remanded on the sole issue of the reasonable amount of Levy's attorney fee.

GARRARD, J., concurs.

HOFFMAN, J., concurs with opinion.

HOFFMAN, Judge, concurring.

I concur except with the majority's interpretation of IND. CODE § 32–8–3–9. I believe that *Zeigler Bldg. Materials, Inc. v. Parkison* (1980), Ind.App., 398 N.E.2d 1330, at 1332, correctly states the law. Such statute certainly creates a lien on the amount due or hereafter due from the owner to the employer or lessee. If a lien was not created what basis would the owner have for refusing to pay the amount due to the employer or lessee when demand was

made. The statute does not operate to make the owner pay twice. The owner is justified in not paying the money due by reason of the statute which must certainly create a lien.