**Robert F. KERN d/b/a Empire Masonry, Appellant–Co–Defendant,**

v.

**CITY OF LAWRENCEBURG, Robes & Kingman, Securities Co., Plaza Properties Company, Donald L. Leathery, Charles R. Snyder, First Federal Savings & Loan Association of Columbus, Ohio, American State Bank of Lawrenceburg and Chicago Title Insurance Company, Appellees–Co–Defendants.**

No. 15A01–9205–CV–144.

Court of Appeals of Indiana, First District.

Dec. 22, 1993.

**1.** *See* IND.CODE 6-1.1-1-2 (1988).

John F. Stroup, Lawrenceburg, for appellant.

Brian K. Burke, Baker & Daniels, Indianapolis, William R. Pfister, Lawrenceburg, for appellees.

ROBERTSON, Judge.

Robert F. Kern, doing business as Empire Masonry, appeals an adverse judgment on his cross-claim for foreclosure of a mechanic's lien against the City of Lawrenceburg, Robes & Kingman Securities Co., First Federal Savings & Loan Assn. of Columbus, Ohio, Plaza Properties Co., Donald L. Leathery and Charles R. Snyder, interest-holders in a property known as Dearborn Plaza. Although Kern did not seek a personal judgment against the City of Lawrenceburg, the owner of the real estate, Kern received a monetary judgment in the amount of $6,900.00, based upon a quantum meruit theory for water hauling services performed at the site, against Charles R. Snyder, Inc., the general contractor on the project, who was not a party to the action or made one by Kern.[1]

The City of Lawrenceburg and the other defendants on the cross-claim, cross-appeal

---

1. In Indiana, it is not necessary for a subcontractor to join the debtor-contractor in its foreclosure action. The contractor is a proper but not necessary party. *Deluxe Sheet Metal, Inc. v. Plymouth Plastics, Inc.* (1990), Ind.App., 555 N.E.2d 1296, 1299, *trans. denied, cert. denied,* —— U.S. ——, 112 S.Ct. 77, 116 L.Ed.2d 50.

and ask that the judgment against Charles R. Snyder, Inc. be vacated as Charles R. Snyder, Inc. was never a party to the action. We order the monetary judgment in favor of Kern vacated for other reasons;[2] in all other respects, the judgment denying foreclosure is affirmed.

At the request of one of the parties, the trial court entered special findings of fact and conclusions of law, of which the following are relevant to this appeal:

13. ... Empire claimed at trial, that Empire performed the work shown on Exhibit J–S as a consequence of oral change orders that Snyder, Inc. authorized during the progress of the job. The provisions of the original contract and the statements on the partial waivers and releases ("the signed agreement to perform now and in the future, each and every covenant and provision of his written contract or suppliers agreement (as the case may be and as modified and changed in writing) provided that change orders, and the like, must be made in writing. If there were any oral change orders, the failure to put them in writing precludes recovery under the lien....

17. Empire seeks to charge Snyder, Inc. Six Thousand Nine Hundred Forty-five ($6,945.00) Dollars for hauling water to the construction site. There was no specific agreement that Snyder, Inc. would pay for hauling water, and Empire agreed to "hold its bid" after learning where water access was located. However, the Court finds that Empire did, in fact, haul water for Snyder and that it was at the request of Snyder's manager, and that Empire should be reimbursed for these efforts on a quantum meruit basis. The only evidence of the value of these services, is Empire's estimate of Six Thousand Nine Hundred ($6,900.00) Dollars; No evidence is presented that that price is unreasonable.

\* \* \* \* \* \*

23. The Contract between Empire and Snyder, Inc. was a fixed-price contract for One Hundred Fifty Thousand Three Hundred ($150,300.00) Dollars.

24. Snyder, Inc. paid Empire all sums that Snyder, Inc. owed to Empire under the fixed-price contract. In so doing, Snyder, Inc. has paid Empire in full for Empire's work on the Dearborn Plaza project.

25. No money properly is due Empire as a consequence of its having performed labor and/or furnished materials and equipment in connection with the Dearborn Plaza project, with the exception of water hauling ... Defendant, Kern, can assert recompense for water hauling on a quantum meruit.

Empire may not properly assert a Mechanic's Lien against the property, but is entitled to judgment in the amount of Six Thousand Nine Hundred ($6,900.00) Dollars.

26. Empire's execution of the Partial Waiver dated September 28, 1977, waived any claim for allegedly unpaid money for labor performed or materials and equipment furnished on the Dearborn Plaza project through September 28, 1977, except for the remaining balance shown on the Partial Waiver, Five Hundred Eight Dollars and five ($508.05) Cents. Snyder, Inc. paid Empire more than Five Hundred Eight Dollars and five ($508.05) Cents after September 28, 1977.

\* \* \* \* \* \*

29. Certain waivers were signed by the defendant, Kern's wife, as secretary for Empire, an authorized corporate officer thereof, knowingly and with full knowledge that she was receiving payments in exchange for the waiver. These were lien waivers and there is no evidence to indicate that this corporate officer did not know what she was signing or was under economic duress or for any other reason would be excused from her binding the corporation thereof with her signature on these waivers.... Empire and its officers are charged with the knowledge of the contents of the contract, specifications, and line waivers.

---

**2.** Kern does not challenge the defendant-appellees' standing to contest the monetary judgment.

■ In reviewing the trial court's findings of fact, we neither weigh the evidence nor determine the credibility of witnesses. *Gibson–Lewis Corp. v. Northern Indiana Public Service Co.* (1988), Ind.App., 524 N.E.2d 1316, 1318, *trans. denied.* Findings of fact will be disturbed only if the record discloses that there were neither facts nor inferences on which to base the findings. *Id.* In other words, this Court will disturb the trial court's findings of fact and judgment only when such are clearly erroneous. *See id.;* Ind.Trial Rule 52(A). Pursuant to this standard of review, we will determine whether the law was correctly applied to the facts. *Gibson–Lewis Corp.*, 524 N.E.2d at 1318.

■ The quoted findings indicate that the trial court considered two possible grounds for denying Kern a judgment in rem for foreclosure: first, that Kern was required by the terms of his contract with Charles R. Snyder, Inc. to obtain a written change order to modify his contract and second, that Kern had waived his right to a mechanic's lien for the water hauling expense in exchange for valuable consideration. Kern does not challenge the sufficiency of the evidence to sustain the findings; in any event, the transcript of evidence supports the findings.

Kern's own exhibits show that his water hauling claim is for work done from November 16, 1976 to June 20, 1977 ($6,000.00) and from September 2, 1977 to October 25, 1977 ($945.00). Kern's wife executed a series of waivers, the last one dated, September 28, 1977. After that date, Charles R. Snyder, Inc. paid out more than the $508.05 remaining on the contract to Kern's suppliers. Kern never submitted any claim for extras or additional compensation during the period when he was receiving draws, and made no claim for water hauling at any time before he filed his lien.

The testimony reflects that the standard in the industry and the specifications for the project placed upon Charles R. Snyder, Inc., the general contractor, the responsibility to supply water to the site. The specifications have not been made a part of the record on appeal. At a meeting in July, 1976, when the final fixed contract price was agreed upon, Charles Snyder, Sr. told Kern to examine the site as there was only one access to water on the site and it was a considerable distance from the area where Kern would perform his work. Kern represented to Snyder, Sr. that he could hold his bid. No agreement was ever reached over who would ultimately be responsible for hauling the water. Kern hauled the water, at the job supervisor's behest, but Kern never asked Charles R. Snyder, Inc. for a written change order or credit and never reported the hauling as an extra. In the end, Charles R. Snyder, Inc. paid Kern and/or his suppliers $11,700.00 more than the contract price.

■ Kern argues that the water hauling expense was separate and distinct from the fixed price contract, and that by their terms, the partial lien waivers applied only to the fixed price contract. But, the trial court found, and Kern does not dispute that by the terms of the contract, any changes to the contract were to be made by written change order.

It is not entirely clear whose responsibility it was to bring water to the area where Kern needed it and the trial court did not make a finding on this issue, finding instead that Kern did the hauling and Charles R. Snyder, Inc. was benefitted by it. If it was not Kern's responsibility to transport the water to his work area, he should have sought a written change order. His contract with Charles R. Snyder, Inc. required him to do so. The rights of the parties on this subject were controlled by the contract and under such circumstances, recovery cannot be had on a theory of quantum meruit. *Kincaid v. Lazar* (1980), Ind.App., 405 N.E.2d 615, 619; *Myers v. Maris* (1975), 164 Ind.App. 34, 326 N.E.2d 577. And, *cf. Gibson–Lewis Corp.*, 524 N.E.2d 1316 (Written directive for change sought before party performed services upon which recovery in quantum meruit granted); *Dyer Construction Co. v. Ellas Construction Co.* (1972), 153 Ind.App. 304, 287 N.E.2d 262 (No express contract governing subject matter); *Coleman v. Chapman* (1966), 139 Ind.App. 385, 220 N.E.2d

285 (express contract; point not covered by express contract, i.e. amount of compensation, implied).

Thus, Kern's assertion that the water hauling services performed were separate and distinct from his obligations under the contract with Charles R. Snyder, Inc. is factually inaccurate. While it may not have been Kern's responsibility initially, if he wanted to receive payment, he was required by the contract to obtain a written change order. Moreover, as a matter of law, Kern cannot recover for the water hauling services on a quantum meruit theory because an express contract covers the subject matter.

> There can be no recovery for extra work in the absence of an express or implied agreement to pay therefor, where it is performed without the knowledge or consent of the other party, or where recovery for the extra services is precluded by a provision of the contract. It has been held that no quantum meruit recovery may be had for extra work beyond the scope of the contract, or for additional services rendered after expiration of the contract term....

*Deck v. Jim Harris Chevrolet–Buick* (1979), 179 Ind.App. 542, 386 N.E.2d 714, 716 (quoting 98 C.J.S. *Work and Labor* § 36 (1957)).

 Kern's assertion that the partial lien waivers applied only to the fixed price contract is factually inaccurate as well. The last waiver, executed by Kern's wife on September 28, 1977, declares that Kern's contract with Snyder, Inc. includes extras and change orders to date and that Kern does

> waive and release to the Owner and Mortgagee any and all liens or rights to liens upon said premises, or upon improvements thereon, or upon the monies or other considerations due as of the date of the aforesaid application or invoice from the Owner or General Contractor or from any other person, firm or corporation, said liens or rights to liens being on account of labor, services, materials, fixtures or apparatus heretofore furnished by or at the request of the undersigned.

The document also requires Kern to represent and warrant "that he has no other outstanding and unpaid applications, invoices, retentions, holdbacks, chargebacks or unbilled work or materials as of the date of the aforementioned application or invoice ..." and provides that

> [i]n addition, for and in consideration of the amounts and sums received and to be received, the undersigned hereby waives, releases and relinquishes any and all claims, rights or causes of action whatsoever arising out of or in the course of work performed on the above-mentioned project, contract or event transpiring prior to the date hereof, excepting the right to receive payment for work performed and properly completed and retainage, if any, after the date of the above-mentioned application or invoice.

 Plainly, the lien waivers were intended to apply to all extra work and any and all other claims arising as a consequence of Kern's work on the project as of the date of the waiver. The evidence reflects that as of September 28, 1977, all but approximately 19 days of water hauling claimed by Kern had been completed. A contractor and owner may by way of a no-lien agreement foreclose subcontractors or materialmen from acquiring mechanic's liens upon the owner's real estate. *Lee & Mayfield, Inc. v. Lykowski House Moving Engineers, Inc.* (1986), Ind.App., 489 N.E.2d 603, 607, *trans. denied.* When a contractor waives his right to a lien, he agrees not to rely on the statutory remedy, but to rely only on his common law remedies against the owner of the property. *Lake County Title Co. v. Root Enterprises, Inc.* (1975), 167 Ind.App. 559, 339 N.E.2d 103, 113, *overruled in part,* 375 N.E.2d 592. The trial court's findings and judgment can therefore be sustained in part on an alternative theory evinced by the findings: that Kern had waived nearly all of his claim for the reasonable value of his water hauling services.

The judgment denying Kern the remedy of foreclosure is affirmed; the judgment in

Kern's favor and against Charles R. Snyder, Inc. is ordered vacated.

BAKER and HOFFMAN, JJ., concur.