**WALSH & KELLY, INC.,
Appellant–Plaintiff,**

v.

**INTERNATIONAL CONTRACTORS, INC., Signature Properties, Inc., and**

---

NW Indiana Vision Homes,[1] Appellees–Defendants.

No. 64A03–1006–PL–284.

Court of Appeals of Indiana.

Feb. 1, 2011.

would have access, at this time, to relief that is unavailable to Zagorac.

1. International Contractors, Inc., and NW Indiana Vision Homes do not participate in this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.

James L. Clement, Lucas, Holcomb & Medrea, LLP, Merrillville, IN, Attorney for Appellant.

Robert F. Parker, Burke Costanza & Cuppy LLP, Merrillville, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Walsh & Kelly, Inc. (Walsh), appeals the trial court's judgment in favor of Appellee–Defendant, Signature Properties, Inc. (Signature), with respect to Signature's claim that it was not fully indemnified for its damages by a collateral assignment agreement and with respect to Signature's claim that Walsh slandered the title of Signature's property.

We affirm.

### ISSUES

Walsh raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred in holding that Signature's collateral assignment agreement with International Contractors, Inc. (International) did not fully indemnify Signature; and

(2) Whether the trial court erred in holding that Walsh was liable to Signature for slander of title.

### FACTS AND PROCEDURAL HISTORY

Signature is a real estate developer that owns property in the Crisman Cove subdivision of Portage, Indiana. The subdivision consists of 36.76 acres divided into 89 lots. In September of 2003, Portage approved the streets in the subdivision for public use, so Signature contracted with International to complete excavation work and install roads and curbs in the subdivision. International completed the excavation work itself but hired Walsh to install the new curbs and pave the roads. As it had agreed, Walsh completed this work on March 31, 2005. Walsh did not, however, do any work on the actual lots owned by Signature.

On May 4, 2005, Walsh billed International $97,588.50 for its work on the road paving and curb installation. Then, on May 9, 2005, International billed Signature $71,685.00. Signature paid International $71,685.00, but International only paid Walsh $78,718.50. After this payment, International still owed Walsh $18,870.00. Subsequently, on August 15, 2005, Walsh billed International for an additional $41,239.50. International billed Signature $41,239.50, and Signature paid International the full $41,239.50. International did not make any further payments to Walsh, which left a remaining balance of $60,109.50 due on the contract between International and Walsh. International

has not made any payments since that time.

When International failed to make payments to Walsh, the Treasurer of Walsh, Michael J. Schaum (Schaum), decided on behalf of Walsh to file a Sworn Statement of Intention to Hold a Lien (mechanic's lien) on October 21, 2005, against 26 of the subdivision lots that Signature had not yet sold. According to Walsh, the lien was only intended to encumber the unimproved lots owned by Signature. Towards that end, Schaum attempted to determine which lots were undeveloped by driving around the subdivision before filing the lien. Walsh also released lots from the lien when it learned that Signature no longer owned the lots. When Schaum made the decision to file the lien, though, he did not seek the advice of Walsh's counsel before doing so. He also admits that he was unaware that Indiana's mechanic's lien statute does not permit a lien to be filed against the property of an owner where the owner has paid the general contractor all sums due and to become due for the work.

In response to Walsh's actions, Signature requested multiple times that Walsh release the lien from its lots. On January 11, 2006, Signature's attorney, Steven W. Handlon (Handlon), wrote a letter to Walsh making this request and asserting that the lien was improper because Walsh had not done any work on those lots. In the same letter, Handlon informed Walsh that Signature had paid all sums due under its contract with International, so it could not legally be the subject of a lien arising out of a debt between International and Walsh. Walsh did not release the lien, though, and Handlon once again contacted Walsh on March 11, 2006, reiterating that the lien was improper and that Signature had fully paid International.

On February 20, 2006, Signature entered into a collateral assignment with Brett Waldo (Waldo), the principal of International. In this collateral assignment, Waldo assigned his right, title, and interest in and to a certain purchase installment agreement (purchase installment agreement) for the purchase of real estate in LaPorte County, Indiana, to Signature, in order to secure payment to Signature for any indebtedness owed by International to Signature as a result of International's failure to pay Walsh. Then, on March 11, 2006, Signature demanded that Walsh commence suit to foreclose on its mechanic's lien within thirty days.

On March 30, 2006, Walsh filed a breach of contract lawsuit against International and a complaint to foreclose mechanic's lien against Signature. Subsequently, on April 24, 2006, Signature filed a counterclaim for slander of title and conversion against Walsh and a cross-claim for indemnity and damages against International. On January 24, 2007, Signature filed a motion for partial summary judgment, asserting that the mechanic's lien was neither valid nor enforceable. In response, Walsh filed a cross-motion for partial summary judgment on February 22, 2007. On July 2, 2007, the trial court held a hearing on the motions for partial summary judgment. Then, on September 14, 2007, the trial court entered its order granting Signature's motion for partial summary judgment, but denying Walsh's motion. Walsh appealed this interlocutory order, and on July 31, 2008, this court affirmed the trial court's partial summary judgment in favor of Signature. *See Walsh & Kelly, Inc. v. International Contractors, Inc., et al.,* 64A03–0712–CV–618, 2008 WL 2930226 (Ind.Ct.App. July 31, 2008).

After the partial summary judgment, the only issues remaining for trial were Walsh's breach of contract claim against

International, Signature's slander of title counter-claim against Walsh, and Signature's indemnity cross-claim against International. On April 7, 2010, the trial court conducted a bench trial. On May 3, 2010, the trial court found for Signature on its slander of title and damages claims. Additionally, the trial court found damages for International's breach of contract with Walsh and refused to consider the collateral agreement between Signature and Waldo as fully indemnifying Signature for its damages from Walsh's mechanic's lien.

Walsh now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

■ In order to prevail on a slander of title claim, a plaintiff must prove that the defendant made false, malicious statements regarding the plaintiff's ownership of the land in question, and that those statements caused the plaintiff pecuniary loss. *Davis v. Sponhauer*, 574 N.E.2d 292, 300 (Ind.Ct.App.1991). Malicious statements are those made knowingly or with reckless disregard for their falsity. *Id.* Malice may be inferred by the trier of fact from the evidence. *Lee and Mayfield, Inc. v. Lykowski House Moving Engineers, Inc.*, 489 N.E.2d 603, 608 (Ind.Ct. App.1986).

Because Walsh is appealing from an adverse judgment following a bench trial, we will not set aside the findings or judgment unless clearly erroneous, and we will give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Ind. Trial Rule 52(A). In deference to the trial court, we only disturb the judgment when there is no evidence supporting the findings, or the findings fail to support the judgment. *Pardue v. Perdue Farms, Inc.*, 925 N.E.2d 482, 488 (Ind.Ct.

App.2010). We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.*

### II. *Collateral Assignment Agreement*

■ One of the central components of Walsh's argument is that Signature's collateral assignment agreement with International fully indemnifies Signature such that it has not suffered pecuniary loss and slander of title. Walsh does not dispute that Signature's attorney fees are sufficient to constitute pecuniary loss. Instead, it argues that Signature's collateral agreement has already made Signature whole. In making this argument, though, Walsh ignores the fact that Signature has not chosen to exercise its right to succeed to International's interest in the real estate purchase agreement that is the subject of the collateral agreement. If Signature had done so, it would be barred from collecting damages from Walsh because the law disfavors a windfall or double recovery. *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566 (Ind.Ct.App.2003). Instead, Signature has chosen to recover its losses from Walsh. Nothing in the language of the collateral assignment agreement prevents Signature from recovering from Walsh rather than International. The agreement specifically states:

> [Signature] shall have the right at any time **(but shall have no obligation)** to take in its name or in the name of [International] or otherwise, such action as [Signature] may at any time or from time to time determine to be necessary to cure any default under the [purchase installment agreement], to protect the rights of [Signature] thereunder, or to enforce all rights of International under the [purchase installment agreement].

(Appellant's App. p. 117) (emphasis added). Accordingly, we conclude that the agreement does not fully indemnify Signature

such that Signature has not suffered a pecuniary loss.

### III. *Slander of Title*

■ The remaining elements Signature must prove for a slander of title claim are that Walsh made a false statement and that its statement was malicious. Walsh does not dispute the trial court's decision that the lien on Signature's property was invalid, so the remaining issue for this court to decide is whether or not the evidence supports the trial court's findings and judgment that Walsh acted maliciously.

As stated above, malicious statements are those made knowingly or with reckless disregard as to their falsity. In *Lee and Mayfield, Inc.*, the owner of a structure, Levy Mathias (Levy), contracted with Lykowski Construction Company (Lykowski) to move that structure to a parcel of land that Levy owned. *Lee and Mayfield, Inc. v. Lykowski House Moving Engineers, Inc.*, 489 N.E.2d 603, 605 (Ind.Ct.App. 1986). In order to fulfill the contract, Lykowski orally agreed to a time and materials contract with Lee and Mayfield, Inc. (Lee), wherein Lee agreed to make certain parts for wheel dollies and spare wheels that would facilitate Lykowski's move of Levy's structure. *Id.* at 606. When Lykowski stopped payments to Lee due to product defects, Lee filed a mechanic's lien on the real estate owned by Levy. *Id.* In a subsequent action and appeal between Levy and Lee regarding the mechanic's lien, this court determined that the lien was recklessly filed because Lee did not have probable cause. *Id.* at 609. Specifically, Lee "knew or should have known that it was not entitled to claim such a lien" because it was not among the class of person's entitled to do so. *Id.* Instead, Lee was attempting to force Levy to intervene in Lee's dispute with Lykowski. *Id.*

Similarly, this court determined in *Freiburger* that a person may be reckless if that person receives notice that the he or she may not be legally entitled to file a lien, but proceeds to file the lien without further investigation. *Freiburger v. Fry*, 439 N.E.2d 169 (Ind.Ct.App.1982). In *Freiburger*, Mr. and Mrs. Freiburger (the Freiburgers) bought property adjoining property owned by Mr. and Mrs. Fry (the Frys). *Id.* at 172. At the point in time when the Freiburgers bought the property, there was a fence between the two tracts of land. *Id.* at 171. The Frys and Mr. Beers, the previous owner of the Freiburger's property, had treated this fence as the legal boundary line of the properties for over twenty years. *See id.* at 171–72. In spite of that fact, Mr. Freiburger requested several times, both before and after purchasing the property, that the Frys remove the fence. *Id.* at 172. When the Frys refused to remove the fence, the Freiburgers cut it down and excavated a ditch on the property. *Id.* At trial, this court affirmed the Frys' claim for slander of title, stating that the Freiburgers were put on notice to discover the true ownership of the disputed area of land when the Frys refused to remove the fence. *Id.* at 174. Because the Freiburgers did not make any such attempts, they acted with reckless disregard for the truth, and, therefore, malice. *Id.*

Here, Walsh's actions are similar to both Lee's actions in *Lee and Mayfield, Inc.* and the Freiburgers' actions in *Freiburger*. Walsh and Signature agree that Walsh did not know that Signature had satisfied its financial obligations towards International before Walsh filed the mechanic's lien against Signature. After Walsh filed the lien, though, Signature's attorney contacted Walsh multiple times to notify Walsh that Signature had paid International and that, as a result, Walsh was not legally

entitled to file a lien against Signature under Indiana's mechanic's lien statute. In spite of these notifications, Walsh refused to release the lien and filed an action to foreclose the lien instead. By filing an action to foreclose the lien instead of releasing the lien after it received notice that it was not legally entitled to file the lien, Walsh acted with reckless disregard for the truth. Walsh 'knew or should have known' that its actions were not permitted by the mechanic's lien statute because it could have easily consulted the statute after receiving Handlon's notice. Consequently, Walsh acted with malice sufficient to support a claim for slander of title.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly held that Signature's collateral assignment agreement with International did not fully indemnify Signature and that Walsh was liable for slander of title.

Affirmed.

ROBB, C.J., and BROWN, J., concur.