**FOR PUBLICATION**



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**DAVID L. SIMMONS**
**SEAN T. DEVENNEY**
Drewry Simmons Vornehm, LLP
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**RICHARD J. DICK**
Mitchell Hurst Dick & McNelis, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.T. MOORE COMPANY, INC., FAHS )
CONSTRUCTION GROUP, HEARTH AT )
TUDOR GARDENS, LLC, and HEARTH AT )
JUDAY CREEK, LLC, )
)
    Appellants, )
)
        vs. )    No. 49A04-1109-CC-463
)
SLANT/FIN CORPORATION, )
)
    Appellee. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick L. McCarty, Judge
Cause No. 49D03-0911-CC-52574

**February 14, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

R.T. Moore Company, Inc., FAHS Construction Group, Hearth at Tudor Gardens, LLC, and Hearth at Juday Creek, LLC (collectively, Appellants) appeal from the trial court's grant of summary judgment in favor of Slant/Fin Corporation. Appellants present one issue on appeal: Did the trial court err in determining that Slant/Fin had a right to enforce Ind. Code Ann. § 32-28-3-9 (West, Westlaw current through 2011 1st Regular Sess.), also known as the Personal Liability Notice Statute (the PLN Statute)?

We reverse.

The facts in this case are undisputed and were stipulated to before the trial court. This case arises out of two separate, private construction projects—the Juday Project and the Tudor Project (collectively, the Projects). For purposes of this appeal, however, the Projects have the same operative facts.

Juday Creek is the owner of a construction project known as the Hearth at Juday Creek located in Mishawaka, Indiana; Tudor Gardens is the owner of a construction project known as the Hearth at Tudor Gardens located in Zionsville, Indiana (collectively, Owners). The Owners hired FAHS Construction to serve as the general contractor to provide improvements to their respective projects. FAHS Construction subcontracted the necessary mechanical work on the Projects to R.T. Moore. R.T. Moore ordered finned tube pipe and an enclosure (the Equipment) to be used in hydronic baseboard heating from Duraflo, a supplier of mechanical equipment. Duraflo in turn ordered the Equipment from Slant/Fin, the manufacturer that was specified in R.T. Moore's approved redesign of the mechanical system. After Duraflo delivered the Equipment to the Projects, Duraflo invoiced R.T. Moore for the Equipment and R.T. Moore paid the balance due Duraflo in a timely manner. Duraflo

2

subsequently suspended its operations and turned over its assets to a secured lender without paying Slant/Fin for the Equipment Slant/Fin supplied and that were ultimately installed on the Projects.

On November 4, 2009, Slant/Fin filed "Notice of Personal Liability" claims pursuant to I.C. § 32-28-3-9 (the Notices) to the Owners, to secure moneys Slant/Fin claimed it was owed for the Equipment supplied and installed on the Projects. Slant/Fin's claim against Juday Creek was in the amount of $31,833.35; its claim against Tudor Gardens was in the amount of $34,670.92. In response to the Notices, the Owners withheld monies owed to project participants on both Projects to protect against the possibility of double payment. As a result, R.T. Moore did not receive payment for labor and materials it supplied to the Projects.

On November 17, 2009, R.T. Moore filed its complaint against Slant/Fin seeking, in part, a declaratory judgment that Slant/Fin, as a "material supplier to a material supplier" on the Projects, lacked standing to assert a claim under the PLN Statute against the Owners and was therefore not entitled to the protections afforded under the PLN Statute. *Appellants' Appendix* at 10, 13. FAHS Construction and the Owners were ultimately joined as plaintiffs in the case. In answering a first amended complaint filed by R.T. Moore, Slant/Fin filed a counterclaim seeking a judgment affirming its rights under the PLN Statute and requiring the Owners to pay Slant/Fin monies it claimed it was owed.

On September 22, 2010, the Plaintiffs filed a motion for summary judgment seeking a declaration that Slant/Fin could not enforce the protections of the PLN Statute. Slant/Fin responded to the motion for summary judgment on October 18, 2011 and filed a cross-motion

3

for summary judgment. The parties stipulated to the determinative facts for purposes of their cross-motions for summary judgment. On December 9, 2010, the trial court held a hearing on the cross-motions for summary judgment, and on April 25, 2011, the trial court entered its order granting Slant/Fin's motion for summary judgment. The parties stipulated to an amended order correcting an apparent typographical error concerning one of the parties, and the trial court issued the amended order on June 27, 2011. Notwithstanding their stipulation to correct the typographical error, the Plaintiffs reserved their right to continue to contest the entry of summary judgment. On June 28, 2011, the Plaintiffs filed a motion to correct errors, to which Slant/Fin filed a response in opposition. After a hearing on September 7, 2011, the trial court filed its order denying the Plaintiffs' motion to correct errors. Plaintiffs now appeal.

When reviewing a trial court's order granting summary judgment, we apply the same standard as that of the trial court. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853 (Ind. Ct. App. 2010).

> Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Our review of a summary judgment motion is limited to those materials designated to the trial court.

*Runkle v. Runkle,* 916 N.E.2d 184, 190 (Ind. Ct. App. 2009) (some citations omitted), *trans. denied.* Because a trial court's grant of summary judgment comes to us clothed with a presumption of validity, the appellants must persuade us that error occurred. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853. We will affirm if the trial court's

4

grant of summary judgment can be sustained on any theory or basis in the record. *Clary v. Dibble,* 903 N.E.2d 1032 (Ind. Ct. App. 2009), *trans. denied.* We must carefully review a grant of summary judgment in order to ensure that a party was not improperly denied his or her day in court. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853.

Plaintiffs argue that the trial court erred in granting summary judgment in favor of Slant/Fin because Slant/Fin, as a material supplier to a material supplier on a private construction project, cannot enforce the protections of the PLN Statute. To address the issue presented, we must interpret the PLN Statute.

> In interpreting the provisions of the personal liability statute, we are faced with a matter of law which we will determine *de novo. Pendleton v. Aguilar,* 827 N.E.2d 614, 619 (Ind. Ct. App. 2005), *reh'g denied, trans. denied.* We are not bound by the trial court's legal interpretation of a statute and need not give it deference. *Id.* We independently determine the statute's meaning and apply it to the facts before us. During our review, the express language of the statute and rules of statutory construction apply. *Id.* We will examine the statute as a whole and avoid excessive reliance on a strict literal meaning or the selective reading of words. *Id.* Where the language of the statute is clear and unambiguous, there is nothing to construe. *Id.* However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. *Id.* The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Further, we are compelled to ascertain and execute legislative intent in such a manner as to prevent absurdity and difficulty and to prefer public conscience. *Id.* In so doing, we are required to keep in mind the object and purpose of the law as well as the effect and repercussions of such a construction. *Id.* at 619–20.

*Gibson-Lewis, LLC v. Teachers Credit Union*, 854 N.E.2d 392, 394-95 (Ind. Ct. App. 2006), *trans. denied*.

The PLN Statute, I.C. § 32-28-3-9, which is found under the chapter pertaining to mechanics' liens, provides in pertinent part:

(a) This section applies to a:
        (1) subcontractor;
        (2) lessor leasing construction and other equipment and tools, regardless of whether an operator is also provided by the lessor;
        (3) journeyman; or
        (4) laborer;
employed or leasing any equipment or tools used by the lessee in erecting, altering, repairing, or removing any house, mill, manufactory or other building, or bridge, reservoir, system of waterworks, or other structure or earth moving, or in furnishing any material or machinery for these activities.

The PLN Statute imposes personal liability on project owners in favor of subcontractors and others identified in subsection (a) that have not been paid by their contractors. *Mercantile Nat'l Bank of Ind. v. First Builders of Ind., Inc.*, 774 N.E.2d 488 (Ind. 2002). Although located in the Indiana Code chapter dealing with mechanics' liens, the PLN Statute is a separate mechanism at the disposal of a subcontractor who has not been paid by its general contractor to seek recovery from the owner of a construction project. *Id.*

As explained by our Supreme Court,

The Mechanics' Lien Statute provides a procedure for persons who perform labor or furnish materials or machinery for construction projects to establish and enforce a lien on the structure on which they have worked or for which they have furnished materials or machinery and on the interest of the owner of the land on which the structure stands or with which it is connected to the extent of the value of the work performed and material furnished.

*Id.* at 490. The PLN Statute

provides a procedure for subcontractors, workers employed by others, and persons who lease materials or machinery for construction projects to establish liability on the part of the owner of the project for the amount owed to such subcontractors, workers, and persons by their respective contractors, employers, and lessees.

*Id.*

A subcontractor's rights under the PLN Statute are viewed as an additional or

6

alternative remedy to the subcontractor's rights under the Mechanics' Lien Statute and to any other remedies the subcontractor may have against its contractor. *Mercantile Nat'l Bank of Ind.*, 774 N.E.2d 488; *see also Lee & Mayfield, Inc. v. Lykowski House Moving Eng'rs, Inc.*, 489 N.E.2d 603 (Ind. Ct. App. 1986), *trans. denied*. The key difference between the Mechanics' Lien Statute and the PLN Statute concerns the limitation on recovery. *Mercantile Nat'l Bank of Ind.*, 774 N.E.2d 488. Under the PLN Statute the owner's liability shall be "for not more than the amount that is due and may later become due from the owner to the employer or lessee." I.C. § 32-28-3-9(d). The Mechanics' Lien Statute, on the other hand, creates a secured interest that gives the subcontractor priority over the owner's unsecured creditors. *Mercantile Nat'l Bank of Ind.*, 774 N.E.2d 488; *see also* I.C. § 32-28-3-1 (West, Westlaw current through 2011 1st Regular Sess.). Further, the Mechanics' Lien Statute "does not, at least in so many words, limit the subcontractor's lien to the amount that the owner owes the contractor." *Mercantile Nat'l Bank of Ind.*, 774 N.E.2d at 490.

Turning now to the precise issue before us, we must examine the PLN Statute and decide if Slant/Fin falls within the class of persons/entities entitled to seek a remedy thereunder. This court has held that the class of individuals protected by the PLN Statute is the same as under the Mechanics' Lien Statute. *Lee & Mayfield, Inc. v. Lykowski House Moving Eng'rs, Inc.*, 489 N.E.2d 603. We found that such a rule is

> consistent with the rationale that the personal liability section provides an alternate or additional remedy for individuals who may be barred from acquiring a mechanic's lien because of a no-lien agreement between the contractor and the owner, or for whom the mechanic's lien might be inadequate due to prior encumbrances on the property.

*Id*. at 608.

7

We further note that the statutory language defining what class of construction industry participants is entitled to make a claim under the PLN Statute is substantially similar to the language defining what construction industry participants are entitled to claim rights under the Mechanics' Lien Statute. As set forth above, the PLN Statute, I.C. § 32-28-3-9, which is found under the chapter pertaining to mechanics' liens, provides in pertinent part:

> (a) This section applies to a:
>     (1)  subcontractor;
>     (2)  lessor leasing construction and other equipment and tools, regardless of whether an operator is also provided by the lessor;
>     (3)  journeyman; or
>     (4)  laborer;
> employed or leasing any equipment or tools used by the lessee in erecting, altering, repairing, or removing any house, mill, manufactory or other building, or bridge, reservoir, system of waterworks, or other structure or earth moving, or in furnishing any material or machinery for these activities.

The Mechanics' Lien Statute specifies:

> (a) A contractor, a subcontractor, a mechanic, a lessor leasing construction and other equipment and tools, whether or not an operator is also provided by the lessor, a journeyman, a laborer, or any other person performing labor or furnishing materials or machinery, including the leasing of equipment or tools, for:
>     (1) the erection, alteration, repair, or removal of:
>             (A) a house, mill, manufactory, or other building; or
>             (B) a bridge, reservoir, system of waterworks, or other structure;
>     (2) the construction, alteration, repair, or removal of a walk or sidewalk located on the land or bordering the land, a stile, a well, a drain, a drainage ditch, a sewer, or a cistern; or
>     (3) any other earth moving operation;
> may have a lien as set forth in this section.

I.C. § 32-28-3-1.

Because the Mechanics' Lien Statute is in derogation of the common law, we have strictly construed its provisions. We have also kept in mind that the purpose of the

8

Mechanics' Lien Statute is to promote honesty and fair dealing among the parties to a construction contract and to prevent unjust enrichment of the owner who enjoys the material improvement of his property." *City of Evansville v. Verplank Concrete & Supply, Inc.*, 400 N.E.2d 812, 818 (Ind. Ct. App. 1980). To that end, we have found that "[w]hile materialmen are within the protected class, the phrase 'all other persons' has not been construed to permit a lien by those parties whose contribution to the effort is remote." *Id.* Indeed, we have found that "materialmen supplying others who must themselves be considered materialmen have traditionally been considered outside the ambit of the statute." *Id.* at 819.[1]

The same principles hold true in construing the PLN Statute. Here, Duraflo is a material supplier to the Projects. Slant/Fin is a materialman that supplied Equipment to Duraflo. Neither Duraflo nor Slant/Fin performed any labor on the Projects. Thus, Slant/Fin is a classic materialman to a materialman. Classified as such, Slant/Fin is not permitted to seek a mechanics' lien, and thus, is not permitted to seek the protections of the PLN Statute. *See id.* We therefore conclude that the trial court erred in granting summary judgment in favor of Slant/Fin.

Judgment reversed.

RILEY, J., and MATHIAS, J., concur.

---

[1] We agree with this court's acknowledgement in footnote 4 in its opinion in *Evansville*, that although in some cases materialmen have been denominated as subcontractors for purposes unrelated to the Mechanics' Lien Statute, such materialmen are not subcontractors within the meaning of the Mechanics' Lien Statute. *City of Evansville v. Verplank Concrete & Supply, Inc.*, 400 N.E.2d at 819 n.4. *But see Nash Engineering Company v. Marcy Realty Corporation, Inc.*, 54 N.E.2d 263 (Ind. 1944); *Western Cas. & Sur. Co. v. State*, 256 N.E.2d 398 (Ind. Ct. App. 1970).