**FOR PUBLICATION**



ATTORNEYS FOR APPELLANTS:

**JAMES O. WAANDERS**
Indianapolis, Indiana

**DONALD J. STUCKEY**
Auburn, Indiana

ATTORNEY FOR APPELLEE
SPRINGFIELD ENTERPRISES, INC.:

**STEPHEN J. HARANTS**
Miller & Harants
New Haven, Indiana

ATTORNEYS FOR APPELLEE J.
LAURIE COMMERCIAL FLOORS, LLC:

**JEREMY J. GROGG**
Burt, Blee, Dixon, Sutton & Bloom, LLP
Fort Wayne, Indiana

**EDMUND P. KOS**
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE JM
WOODWORKING COMPANY:

**W. ERIK WEBER**
Mefford, Weber and Blythe, PC
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRED C. FEITLER, MARY ANNA FEITLER, and THE FEITLER FAMILY TRUST, | ) ) ) | |
| Appellants/Defendants/Counterclaim Defendants/Cross-Claim Defendants, | ) ) ) ) | |
| vs. | ) ) | No. 17A04-1206-PL-297 |
| SPRINGFIELD ENTERPRISES, INC., | ) | |

|                                                          | ) |
| :------------------------------------------------------- | :- |
| Appellee/Plaintiff/Counterclaim                          | ) |
| Defendant/Cross-Claim Defendant,                         | ) |
|                                                          | ) |
| J. LAURIE COMMERCIAL FLOORS, LLC,                        | ) |
| d/b/a JACK LAURIES FLOOR DESIGNS,                        | ) |
|                                                          | ) |
| Appellee/Counterclaim Plaintiff/                         | ) |
| Cross-Claim Plaintiff/Third-Party                        | ) |
| Plaintiff/Cross-Claim Defendant,                         | ) |
|                                                          | ) |
| and                                                      | ) |
|                                                          | ) |
| JM WOODWORKING COMPANY,                                  | ) |
|                                                          | ) |
| Appellee/Third-Party Defendant/                          | ) |
| Cross-Claim Plaintiff.                                   | ) |

APPEAL FROM THE DeKALB SUPERIOR COURT
The Honorable Kevin P. Wallace, Judge
Cause No. 17D01-1003-PL-10

**November 7, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

At some point in mid-2010, Fred and Mary Anna Feitler, who were the sole beneficiaries of a land trust that owned real estate in DeKalb County, contracted with Cedar Creek Homes ("CCH") to build a house on the property. Among other things, the Feitlers and CCH agreed that no mechanic's lien could attach to the property in the event of nonpayment. CCH engaged several subcontractors, including Springfield Enterprises, J. Laurie Commercial Floors, LLC, and JM Woodworking Company, to work on the house. In

2

February of 2011, before the house was completed, CCH informed all concerned that it was ceasing operations and would not be completing the house. When the dust settled, it appears that all subcontractors except Springfield, J. Laurie, and JM were paid off, and all three ultimately became involved in litigation against the Feitlers and the land trust. J. Laurie and JM argued that they should be able to hold mechanic's liens against the property in question, while all three former subcontractors contended that they should be able to secure money judgments against the Feitlers. The trial court agreed with all of these arguments and entered summary judgment in favor of all three subcontractors on each of these claims.

On appeal, the Feitlers and the land trust contend that neither J. Laurie nor JM should be able to hold a mechanic's lien against the real estate and also that the trial court erred in entering summary judgment in favor of the subcontractors on the question of personal liability. We agree that neither J. Laurie nor JM can hold a mechanic's lien against the real estate and also conclude that the question of the Feitlers' personal liability to the subcontractors should go to trial.

## FACTS AND PROCEDURAL HISTORY

### A. Facts

The Feitlers reside in and created the Feitler Family Trust ("the Trust") in DeKalb County, which is also where the real estate that is the subject of this litigation ("the Property") is located. Mary Anna and Fred Feitler are the sole co-trustees and sole beneficiaries of the Trust, which was created on November 1, 2007. In November of 2007, the Property was transferred from Mary Anna to the Trust. On July 7, 2009, the Feitlers

3

entered into a no-lien agreement ("the Agreement") with CCH, a contractor hired to build a home on the Property for a contract price of $478,225.00. The Agreement listed the Feitlers as the owners of the Property. On July 9, 2009, the Agreement was recorded in DeKalb County. On July 31, 2009, the Trust conveyed the Property back to the Feitlers via a trustee's deed. Also on July 31, 2009, the Feitlers executed a mortgage on the Property in favor of Three Rivers Federal Credit Union as security for a $350,000.00 loan. The mortgage and trustee's deed were recorded on August 7, 2009. On December 23, 2009, the Feitlers conveyed the Property back to the Trust, and the quit-claim deed was recorded on December 30, 2009. On or about February 2, 2010, CCH notified Appellees and the Feitlers that it was ceasing business operations, would not complete work on the Property, and would make no further payments to Appellees. In response to a later interrogatory, Three Rivers indicated that it had issued four draws of $91,645.00 each to CCH as of February 2, 2010, for a total of $366,580.00.

Between January 7 and 29, 2010, J. Laurie, a subcontractor to CCH, provided certain labor and materials to the Property, specifically flooring, some of which was in place as of February 2, 2010. On February 11, 2010, J. Laurie executed a pre-lien notice of intention to preserve mechanic's lien rights, which notice was recorded the next day. Also on February 11, 2010, J. Laurie sent a notice of personal liability pursuant to Indiana's personal liability notice statute ("the PLN statute") to the Feitlers and the Trust. On March 5, 2010, J. Laurie executed a notice of mechanic's lien, which was recorded three days later. The trial court found that the value of materials and services J. Laurie provided was $21,318.30. On April

4

7, 2010, the Feitlers caused Three Rivers to pay J. Laurie $4213.62 for flooring materials on the property but not installed as of February 2, 2010.

Springfield subcontracted with CCH to install siding, soffits, and gutters on the Property, providing what the trial court found to be $27,103.36 of materials and services before February 2, 2010. On February 2, 2010, Springfield sent the Feitlers a letter notifying them that failure to pay for work performed might result in the assertion of mechanic's lien rights. On February 3, 2010, Springfield executed a notice of mechanic's lien, which was recorded on February 5. On February 10, 2010, Springfield sent the Feitlers a notice of personal liability pursuant to the PLN statute.

JM subcontracted with CCH to install cabinets on the Property, which were partially installed by February 2, 2010, ultimately providing what the trial court found to be $21,318.30 in materials and services. On or about February 2, 2010, JM owner John Lengacher discussed the matter with the Feitlers, and Fred guaranteed payment for the cabinets. The Feitlers made assurances that they would specifically contract with JM to complete the cabinet installation. The cabinet installation was soon completed, and the Feitlers gave Lengacher further assurances that JM would be paid for its work. On February 5, 2010, Lengacher issued an invoice to the Feitlers in the amount of $22,774.95. Fred eventually notified JM that it would not be paid. On February 22, 2010, JM sent the Feitlers a notice of personal liability pursuant to the PLN statute. On February 26, 2010, JM executed a notice of mechanic's lien, which was recorded the same day.

### B. Procedural History

5

On March 4, 2010, Springfield filed a complaint to foreclose its mechanic's lien and for damages, naming the Feitlers, the Trust, CCH, and Three Rivers as defendants. On April 30, 2010, the Feitlers and the Trust filed a cross-claim against Three Rivers. On June 14, 2010, J. Laurie moved to intervene, and, on July 28, 2010, filed a cross-claim against the Feitlers, the Trust, CCH, and Three Rivers; a counterclaim against Springfield; and a third-party complaint against JM and the DeKalb County Treasurer. On September 10, 2010, JM intervened and filed cross-claims against CCH, the Trust, Three Rivers, the Feitlers, Springfield, J. Laurie, and the DeKalb County Treasurer.

On April 13, 2011, J. Laurie filed for partial summary judgment, seeking to foreclose on its mechanic's lien and judgment against the Feitlers pursuant to the PLN statute. On May 20, 2011, Springfield filed for partial summary judgment, seeking judgment against the Feitlers pursuant to the PLN statute. On June 1, 2011, JM filed for partial summary judgment, seeking to foreclose on its mechanic's lien and judgment against the Feitlers pursuant to the PLN statute. On May 14, 2012, the trial court entered partial summary judgment in favor of J. Laurie, Springfield, and JM, ruling that (1) J. Laurie's and JM's mechanic's liens were valid, (2) the Feitlers were personally liable to J. Laurie for $19,756.46 plus pre- and post-judgment interest, (3) the Feitlers were personally liable to Springfield for $31,053.46, and (4) the Feitlers were personally liable to JM for $22,774.95 plus pre- and post-judgment interest.

## DISCUSSION AND DECISION

### Summary Judgment Standard of Review

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

### I. Whether the Trial Court Erred in Ruling that J. Laurie's and JM's Mechanic's Liens Were Valid

Appellants contend that neither J. Laurie nor JM can hold mechanic's liens on the Property. JM argues that it reached a separate agreement with the Feitlers to complete its work and so may hold a mechanic's lien in its own right, while Appellants contend that JM's failure to file a pre-lien notice prevents them from holding a mechanic's lien. J. Laurie argues that the Agreement should not be enforced, as the Feitlers signed it in their individual capacities and were identified as the owners of the Property when, in fact, the Trust, as the holder of legal title, was the only entity that qualified as an "owner" at the time. Appellants contend that the Feitlers qualify as owners pursuant to the mechanic's lien and that the

7

Agreement is therefore binding on J. Laurie.

Resolving these issues will require us to consider the language of the Indiana mechanic's lien statute. "The interpretation of a statute is a question of law reserved for the courts." *Scott v. Irmeger*, 859 N.E.2d 1238, 1239 (Ind. Ct. App. 2007).

> A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Rupert v. State*, 717 N.E.2d 1209, 1210 (Ind. Ct. App. 1999).

*Fuller v. State*, 752 N.E.2d 235, 237-38 (Ind. Ct. App. 2001). "Our initial inquiry is whether the statute is clear and unambiguous on its face." *Ind. Fam. & Soc. Servs. Admin. v. Radian*, 755 N.E.2d 617, 622 (Ind. Ct. App. 2001). "Construction is warranted only where a statute is susceptible to more than one interpretation." *Id.*

## A. JM

JM designated uncontradicted evidence that, after learning that CCH was no longer going to work on the property, it reached a separate agreement with the Feitlers to complete its work. Consequently, JM argues, it no longer had the status of a subcontractor and may therefore hold a mechanic's lien as a contractor. Appellants do not dispute that the Feitlers entered into a separate agreement with JM to complete its work, but contend that JM's failure to file a pre-lien notice pursuant to Indiana Code section 32-28-3-1(i) prevents it from

holding a mechanic's lien in any event.

Indiana Code section 32-28-3-1 provides, in part, that "a contractor … for … the erection, alteration, repair, or removal of … a house … may have a lien … to the extent of the value of any labor done or material furnished[.]" Ind. Code § 32-28-3-1(a); -1(b). Indiana Code section 32-28-3-1(i) provides that

> (i) A person, firm, partnership, limited liability company, or corporation that sells or furnishes on credit material, labor, or machinery for the original construction of a single or double family dwelling for the intended occupancy of the owner upon whose real estate the construction takes place to a contractor, subcontractor, mechanic, or anyone other than the owner or the owner's legal representatives must:
>> (1) furnish the owner of the real estate:
>>> (A) as named in the latest entry in the transfer books described in IC 6-1.1-5-4 of the county auditor; or
>>> (B) if IC 6-1.1-5-9 applies, as named in the transfer books of the township assessor (if any) or the county assessor;
>> with a written notice of the delivery or labor and the existence of lien rights not later than sixty (60) days after the date of the first delivery or labor performed; and
>> (2) file a copy of the written notice in the recorder's office of the county not later than sixty (60) days after the date of the first delivery or labor performed.
> *The furnishing and filing of the notice is a condition precedent to the right of acquiring a lien upon the real estate or upon the improvement constructed on the real estate.*

(Emphasis added).

JM notes that the mechanic's lien statute treats contractors and subcontractors differently in some respects and also that its direct dealings with the Feitlers satisfied what it claims is the purpose of subsection (i), which is to put the Feitlers on notice. While both of these statements may be true, as far as they go, subsection (i), at least, makes no distinction

9

between contractors and subcontractors, and its plain language makes the filing of a pre-lien notice a condition precedent to the right to hold a lien with no provision for exceptions to this rule. JM points to no authority suggesting that we can simply ignore the plain language of subsection (i), and our research has discovered none. Consequently, we conclude that the trial court erred in determining that JM may hold a lien on the Property.

## B. J. Laurie

Indiana Code section 32-28-3-1 provides, in part, that "a subcontractor … for … the erection, alteration, repair, or removal of … a house … may have a lien … to the extent of the value of any labor done or material furnished[.]" Ind. Code § 32-28-3-1(a); -1(b). An owner of real estate and a principle contractor, however, may enter into a no-lien agreement, such as the Agreement here, pursuant to subsection (e) of the mechanic's lien statute:

> a contract … for the construction, alteration, or repair of a [building or structure that is intended to contain or contains only one (1) dwelling unit] … may include a provision or stipulation in the contract of the owner and principal contractor that a lien may not attach to the real estate, building, structure or any other improvement of the owner.

Ind. Code § 32-28-3-1(e) (bracketed material from Ind. Code § 22-12-1-5(a) definition of "Class 2 structure").

Moreover, the no-lien contract will be valid against subcontractors if the following conditions are met:

> The contract must:
> (1) be in writing;
> (2) contain specific reference by legal description of the real estate to be improved;
> (3) be acknowledged as provided in the case of deeds; and
> (4) be filed and recorded in the recorder's office of the county in which the

10

real estate, building, structure, or other improvement is situated not more than five (5) days after the date of execution of the contract.

Ind. Code § 32-28-3-1(f).

As we have noted, "[t]he clear purpose of the statute is to provide record notice of the no-lien contract to subcontractors, materialmen, and other individuals who, in the absence of such an agreement, would be entitled to place a mechanic's lien on the premises." *Fordeck-Kemerly Elec., Inc. v. Helmkamp*, 591 N.E.2d 1035, 1038 (Ind. Ct. App. 1992) (citing previous version of Indiana's mechanic's lien statute), *trans. denied.* As previously mentioned, the Agreement was executed and recorded by the Feitlers when legal title to the Property was held by the Trust. The questions here are whether this was sufficient to put J. Laurie on record notice of the Agreement and whether the Feitlers qualify as "owners" for purposes of the mechanic's lien statute.

### 1. Record Notice

We conclude that the Agreement, although not technically compliant with Indiana Code section 32-28-3-1's requirements, was sufficient to place potential subcontractors on record notice that a no-lien contract was in effect. Appellants designated uncontradicted evidence establishing that even the most cursory search of the DeKalb County Recorder's computerized database, which has been in use since June 25, 2009, reveals the existence of the Agreement attached to the Property. On July 23, 2011, Deborah A. Rafine went to the DeKalb County Recorder's office and searched for the following terms and real estate description: "Feitler, Fred[,]" "Cedar Creek Homes, Inc.[,]" "Feitler, Fred (Trust)[,]" and

11

"S:26 T:33N R:12E Q:SE[.]" Appellant's App. p. 447. All four searches revealed the existence of the Agreement, that it was recorded on July 9, 2009, that CCH and Fred were parties to it, and that it pertained to the Property. Moreover, Appellants designated evidence that a September 9, 2009, title insurance commitment notes the existence of the Agreement.[1] We conclude that the Agreement, as executed and recorded, was sufficient to place potential subcontractors on record notice of its existence.

## 2. Feitlers as "Owners"

The second question is whether the Feitlers can be considered "owners" for purposes of the mechanic's lien statute, despite not holding legal title to the Property when the Agreement was executed. If so, the Agreement is valid and may be enforced against J. Laurie. Appellants argue that "owners" are not limited to legal title holders for purposes of the mechanic's lien statute and that they, as sole beneficiaries of the Trust, qualify. J. Laurie contends essentially that only the holder of the legal title is an owner under the mechanic's lien statute and that the Feitlers were not owners when they executed the Agreement. We agree with Appellants.

As we have noted, "[t]here is nothing in our mechanic's lien statutes which indicates that the word 'owner' was used in a narrow sense, meaning only owner of the fee[.]"

---

[1] J. Laurie designates evidence that on February 3, 2010, it ordered a title search on the Property, which did not disclose the Agreement, the July of 2009 transfer of the Property from the Trust to the Feitlers, or the December of 2009 transfer of the Property from the Feitlers back to the Trust. (Appellant's App. 277-80). J. Laurie points to the results of this search as evidence that "the No-Lien Agreement was not properly recorded or indexed in the Trust's name." J. Laurie's Br. p.11. While this may be true, it does not help J. Laurie much. Given Appellants' designated evidence and J. Laurie's failure to designate the parameters of the title search, we may safely assume that J. Laurie's title search did not include searching for CCH, which *was* properly indexed, or the Property.

*Fletcher Ave. S&L Ass'n v. Roberts*, 99 Ind. App. 391, 396, 188 N.E. 794, 796 (1934).[2]

Indeed, relevant statutory language supports the conclusion that the word "owner" is intended

to be interpreted somewhat broadly. Indiana Code section 32-28-3-2(a) provides that

> The entire land upon which the building, erection, or other improvement is situated, including the part of the land not occupied by the building, erection, or improvement, is subject to a lien *to the extent of the right, title, and interest of the owner for whose immediate use or benefit the labor was done or material furnished.*

(Emphasis supplied).

The *Roberts* court, analyzing similar language in a predecessor statue to section 32-28-3-2, noted that the General Assembly's use of the words "right" and "interest" would be rendered superfluous if "owner" were to be defined only as the holder of legal title. *Roberts*, 99 Ind. App. at 396, 188 N.E. at 796 (interpreting the phrase "the entire land … shall be subject to lien to the extent of all the *right, title* and *interest* owned therein by the owner thereof…" (emphases in *Roberts*)).[3] Thankfully, section 32-28-3-2 also helps us to identify the "owner" from among potential candidates, providing that mechanic's liens apply to those "for whose immediate use or benefit the labor was done or material furnished."

We have little trouble concluding that the Feitlers qualify as "owners" under the mechanic's lien statute, even though the Trust held legal title to the Property when the Agreement was executed and recorded. Put simply, the Feitlers were the persons who

---

[2] The version of this passage found in the *www.westlaw.com* database differs from the official version as found in the Indiana Appellate Court Reports by replacing the second appearance of the word "owner" with "owners."

[3] The version of this passage found in the *www.westlaw.com* database differs from the official version as it appears in the Indiana Appellate Court Reports by replacing the ellipses with triple asterisks.

ordered the construction of a new home and for whose immediate use the labor was done and material furnished.  Whatever their legal status *vis-à-vis* the Property, the Feitlers were going to live in the new house and walk the floors installed by J. Laurie, not the legal entity the Trust.

We hardly break new ground today, because in holding that the Feitlers are owners under the mechanic's lien statute, we explicitly apply the rule, formulated in a similar context, which was accepted and adopted by the *Roberts* court in 1934:

> In *Hines v. Hollingsworth-Young Hardware Co.* (1917), 178 Ky. 233, 237, 198 S. W. 716, the Court of Appeals of Kentucky determined whether or not a *cestui que* trust, for whose benefit a trustee was holding real estate under an express trust, was an "owner" of the real estate within the meaning of mechanics' and materialmen's liens law of that state (Chap. 79, Sec. 2463, Carroll's Ky. Statutes), and in that case, that court said:
>> "As a general rule, a mechanic's or materialman's lien may be imposed upon whatever interest the individual, who contracts for the work or materials, may own in the property, upon which the work is done or the materials used, whether the interest of such individual is a legal or equitable one. The lien may attach to an equitable interest in property[.]"

14

*Roberts*, 99 Ind. App. at 396, 188 N.E. at 795.[4]  Because the Feitlers, as sole beneficiaries of the Trust, had an equitable interest in the Property, they qualify as owners under Indiana's mechanic's lien statute.  As such, the Agreement is valid and binding on J. Laurie, rendering it incapable of holding a mechanic's lien on the Property.

## II.  Whether the Trial Court Erred in Ruling that the Feitlers are Personally Liable to J. Laurie, Springfield, and JM

Appellants argue that there is no designated evidence establishing any amounts of money owed to CCH at the time notices of personal liability were sent to Appellees, which would preclude personal liability to Appellees arising under the PLN statute.  Indiana Code section § 32-28-3-9, which is found under the chapter pertaining to mechanics' liens, provides in part:

> (a) This section applies to a:
>     (1) subcontractor;
>     (2) lessor leasing construction and other equipment and tools, regardless of whether an operator is also provided by the lessor;
>     (3) journeyman; or

---

[4] The version of this passage found in the *www.westlaw.com* database contains no fewer than eleven alterations to, additions to, and deletions from the original passage as it appears in the Indiana Appellate Court Reports.  Rather than list them, the *www.westlaw.com* passage is reproduced here for comparison:

> In *Hines v. Hollingsworth-Young Hardware Co.* (1917) 178 Ky. 233, 198 S.W. 716, 717, 4 A.L.R. 1018, the Court of Appeals of Kentucky determined whether or not a cestui que trust, for whose benefit a trustee was holding real estate under an express trust, was an "owner" of the real estate within the meaning of mechanic's and materialmen's liens law of that state (chapter 79, § 2463, Carroll's Ky. Statutes), and in that case, that court said:
>> "As a general rule, a mechanic's or materialman's lien may be imposed upon whatever interest the individual who contracts for the work or materials may own in the property upon which the work is done or the materials used, whether the interest of such individual is a legal or equitable one. The lien may attach to an equitable interest in property[.]"

While, as with the differences noted in footnotes 2 and 3, the meaning of the passage does not seem to have changed, it goes without saying that we will continue to use caution when citing to non-official sources.

(4) laborer;
employed or leasing any equipment or tools used by the lessee in erecting, altering, repairing, or removing any house, mill, manufactory or other building, or bridge, reservoir, system of waterworks, or other structure or earth moving, or in furnishing any material or machinery for these activities.

"Enforcement of a 'mechanics' lien' is one of two statutory mechanisms that Indiana law provides for subcontractors that have not been paid by their contractors to seek payment from construction project owners." *Mercantile Nat. Bank of Ind. v. First Builders of Ind., Inc.*, 774 N.E.2d 488, 489 (Ind. 2002) (citing Ind. Code §§ 32-8-3-1 through -8). "The second mechanism, although located in the Indiana Code chapter dealing with mechanics' liens, is completely separate." *Id*. "It imposes 'personal liability' on project owners in favor of subcontractors that have not been paid by their contractors[.]" *Id*. "A subcontractor's rights under the PLN Statute are viewed as an additional or alternative remedy to the subcontractor's rights under the Mechanics' Lien Statute and to any other remedies the subcontractor may have against its contractor." *R.T. Moore Co., Inc. v. Slant/Fin Corp.*, 966 N.E.2d 636, 640-41 (Ind. Ct. App. 2012) *trans. denied*. The PLN statute "'provides that upon notice to the owner by a subcontractor … of the subcontractor's claim against the contractor, … the owner shall be liable to the subcontractor for that claim up to the amount that the owner owes the contractor.'" *Controlled Demolition, Inc. v. F.A. Wilhelm Constr. Co.*, 84 F.3d 263, 265 (7th Cir. 1996) (quoting *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1436 (7th Cir. 1993)). Put another way, "recovery can be had only from funds owed by the owner to the contractor for work done on his property and if he has already paid all of the money due to the general contractor, he cannot be forced to pay a

16

second time." *Indpls. Power & Light Co. v. Todd*, 485 N.E.2d 632, 635 (Ind. Ct. App. 1985).

To strip the parties' arguments to their essentials, Appellants contend that the designated evidence establishes that CCH was paid off at the time of the notices and that the Appellees therefore have no claim under the PLN statute against them, while Appellees contend that the designated evidence conclusively shows that CCH was not, in fact, paid off when the notices were sent. We cannot agree with either side, concluding that there is a genuine issue of material fact regarding the question, and so remand for trial.

Between February 11 and 22, 2010, Appellees sent notices of personal liability to the Feitlers. Among other things, Appellants designated Fred's affidavit, in which he averred that "no amount was due by the Feitlers to Cedar Creek Homes, Inc. under the Construction Contract at the time of the notices of personal liability." Appellant's App. p. 467. If found true, this assertion would preclude liability under the PLN statute. For their part, Appellees point to designated evidence that the price of the contract between the Feitlers and CCH was $478,225.00 and that, as of the date of CCH's cessation of business, Three Rivers had disbursed $366,580.00 to it. In our view, this evidence, along with the absence of any specific evidence tending to show additional payments made against the contract price, raises the reasonable inference that the contract was not, in fact, paid off when CCH ceased doing business. In short, both sides of the issue have designated evidence that would, if believed, carry the day on the question of liability pursuant to the PLN statute. Consequently, this issue is not suitable for disposition by summary judgment.

Springfield contends that we should simply ignore Fred's "conclusory" statement that

17

the contract had been paid off before the personal liability notices were sent out. We decline Springfield's invitation. The case on which Springfield relies for this proposition, *Coghill v. Badger*, 430 N.E.2d 405 (Ind. Ct. App. 1982), says only that "a court considering a motion for summary judgment should disregard *inadmissible* information contained in supporting or opposing affidavits[,]" not "conclusory" ones. *Id*. at 406 (emphasis added). In any event, Fred's statement was not conclusory because it was not based on any conclusion: the averment that the contract price had been satisfied before the notices were sent is a clear and unequivocal assertion of fact.

## SUMMARY

We conclude that the trial court erred in concluding that JM and J. Laurie could hold mechanic's liens against the property. In JM's case, JM failed to issue the mandatory pre-lien notice, and in J. Laurie's case, J. Laurie is bound by the Agreement. Consequently, we remand with instructions to enter summary judgment in favor of Appellants on these points. We further conclude that the trial court erred in entering summary judgment in favor of all three Appellees on the question of personal liability pursuant to the PLN statute. Concluding that there exists a genuine issue of material fact on whether the Feitlers satisfied the construction contract with CCH before Appellees sent notices of personal liability, we remand for trial on this question.

We reverse the judgment of the trial court and remand with instructions.

ROBB, C.J., and BAKER, J., concur.

18