
**FILED**
Jun 11 2015, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Edward P. Grimmer
Daniel A. Gohdes
Edward P. Grimmer, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Kevin E. Steele
Burke Costanza & Carberry, LLP
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael R. Bixeman and
Doreen Bixeman,

*Appellants/Plaintiffs/Cross-Appellees,*

v.

Hunter's Run Homeowners
Association of St. John, Inc.,

*Appellee/Defendant/Cross-Appellant.*

June 11, 2015

Court of Appeals Case No.
45A03-1411-PL-406

Appeal from the Lake Superior
Court;
The Honorable Diane Kavadias
Schneider, Judge;
45D11-1305-PL-43

**May, Judge.**

[1] Michael R. Bixeman and Doreen Bixeman ("Bixemans") appeal the court's declaration as moot their allegation of slander of title by Hunter's Run Homeowners Association of St. John, Inc. ("Hunter's Run"). Hunter's Run cross-appeals the court's determination the sanction Hunter's Run imposed against Bixemans was invalid.

[2] We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[3] Bixemans own a residence in the Hunter's Run Subdivision that is encumbered by a Declaration of Covenants, Conditions, Restrictions and Easements ("Declaration"). Article XI, Section 8 of the Declaration requires owners who wish to rent their residence to others to provide leases in writing and to rent the residence for at least six months initially and for not less than thirty days thereafter. Section 6 of the Rules and Regulations[1] states owners must provide a copy of the lease to Hunter's Run at least fifteen days prior to the effective date of the lease. It also provides the lease must contain a clause that obligates the prospective tenant to acknowledge receipt of the Declaration.

[4] In 2012, Bixemans moved to Iowa. On October 7, 2012, Bixemans rented their residence to another party, effective October 1, 2012. Bixemans did not provide the lease to Hunter's Run fifteen days prior to its effective date, and the lease

---

[1] The Rules and Regulations are a document amended and adopted by Hunter's Run on February 28, 2012, "in furtherance of the powers, authorities and restrictions upon use contained within the Declaration of Covenants." (App. at 65.)

did not contain a clause requiring the tenants' acknowledgement of receipt of the Declaration.

[5] The Declaration Article XII, in pertinent part, states:

> The Board of Directors shall not impose a Special Assessment as a sanction, suspend the right to vote, or infringe upon any other rights of an Owner or Occupant for any such violations unless and until the following procedure is followed:
>
> 1. Demand. Written demand to cease and desist from an alleged violation shall be served upon the alleged violator specifying: (a) the alleged violation; (b) the action required to abate the violation; and (c) a time period, not less than ten (10) days, during which the violation may be abated without further action.
>
> 2. Notice. If the violation continues past the period allowed in the demand for abatement without sanction, the Association shall serve the violator with written notice of the hearing. The notice shall contain: (a) the nature of the alleged violation; (b) the time and place of the hearing, which time shall not be less than ten (10) days from the giving of the notice; (c) and invitation to attend the hearing and produce any statements, evidence and/or witnesses in his/her behalf; and (d) the proposed sanction to be imposed.
>
> 3. Hearing. The hearing shall be held in executive session by the Board of Directors pursuant to the notice affording the violator a reasonable opportunity to be heard. Prior to the effectiveness of any sanction hereunder, proof of notice, the invitation to be heard, the written result and statements of the sanction shall be placed in the minutes of the meeting. Such proof shall be deemed adequate if a copy of notice together with a statement of the date and manner of delivery is entered by the officer or director who delivered such notice. The notice requirement shall be deemed satisfied if a violator appears at the meeting.

(Appellant's App. at 51-52.)

[6] On October 22, 2012, Hunter's Run notified Bixemans of their violation and of a Homeowner's Association hearing to be held on October 29, 2012. Bixemans

were unable to travel from Iowa for the hearing, and Hunter's Run would not allow them to appear by telephone. Hunter's Run made no decision at the hearing and requested Bixemans submit any evidence in writing. Hunter's Run did not receive a response it considered adequate, and on December 13, 2012, it imposed a $250.00 sanction on Bixemans. Bixemans did not pay, and Hunter's Run recorded a $2,525.00 lien against the Bixemans' property. Bixemans were notified of the lien by a Notice of Lien tendered to them on February 18, 2013.

[7] Bixemans sued for release of the lien. Hunter's Run counter-sued to enforce and foreclose the lien. Bixemans filed a partial motion for summary judgment requesting the court find invalid the lien that slandered their title and find in their favor on all counterclaim issues. Hunter's Run moved for declaratory judgment and foreclosure of its lien.

[8] The trial court entered summary judgment, ordering Bixemans to pay the $250.00 sanction and ordering Hunter's Run to release the invalid lien; in ordering the lien released, the court declared that "[d]ue to the invalidity of the lien, Plaintiff's allegation for slander of title is moot." (App. at 14.) After Bixemans filed a motion to correct error, the trial court declared the sanction invalid and reversed the order Bixemans pay it, but it reaffirmed its findings as to the slander of title.

# Discussion and Decision

[9] A trial court has broad discretion in ruling on a motion to correct error. *Volunteers of Am. v. Premier Auto Acceptance Corp.,* 755 N.E.2d 656, 658 (Ind. Ct.

App. 2001). We will reverse only for an abuse of that discretion. *Id.* An abuse of discretion occurs if the decision was against the logic and effect of the facts and circumstances before the court or if the court misapplied the law. *Id.*

[10] The propriety of a decision on a motion to correct error after a summary judgment depends on the validity of the decision to grant or deny summary judgment. We review summary judgment *de novo,* applying the same standard as the trial court. *Hughley v. State,* 15 N.E.3d 1000, 1003 (Ind. 2014). Drawing all reasonable inferences in favor of the non-moving party, we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id.*

[11] The initial burden is on the summary-judgment movant to demonstrate there is no genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with evidence showing there is an issue for the trier of fact. *Id.* While the non-moving party has the burden on appeal of persuading us a summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant was not improperly denied his day in court. *Id.*

## Sanction

[12] The trial court did not err when it declared the sanction invalid, as Hunter's Run did not follow the procedures agreed upon in the Declaration. The Declaration is tantamount to a contract. *See Villas W. II of Willowridge Homeowners Ass'n, Inc. v. McGlothin*, 885 N.E.2d 1274, 1278 (Ind. 2008) ("A restrictive covenant is an express contract between grantor and grantee that restrains the grantee's use of his land.").

[13] Hunter's Run concedes it did not follow the "due process"[2] specified in Declaration Article XII, as the notice given to the Bixemans occurred only seven days before the hearing and meeting minutes were not preserved for the record. It, therefore, asserts its substantial compliance should absolve it of any requirement to follow the process for sanctions outlined in the Declaration.[3] It does not.

[14] Hunter's Run relies on *Gibson v. Neu*, 867 N.E.2d 188, 195 (Ind. Ct. App. 2007), which declared there is substantial compliance only if "performance of a nonessential condition is lacking, so that the benefits received by a party are far

---

[2] The court was referring not to the constitutional right, but rather to a right to the process outlined in the Declaration.

[3] Hunter's Run also asserts it should be excused for its failure to follow the process for sanctions because it acted "upon advice of counsel." (Appellee's Br. at 9.) Indiana Appellate Rule 46(A)(8)(a) requires each contention be supported by cogent reasoning and "supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on." As Hunter's Run has not cited any authority in support of its assertion, this argument is waived.

greater than the injury done to him by the breach of the other party." *Id.* (quoting *Dove v. Rose Acre Farms, Inc.*, 434 N.E.2d 931 (Ind. Ct. App. 1982)).

[15] We decline to hold the requirement to wait ten days after giving notice was a "nonessential condition." All parties acknowledge Bixemans were unable to be at the meeting with only seven days' notice. Hunter's Run willingly agreed to the process of assessing sanctions that included ten days' notice. If it did not want to or was unable to follow the process, it could have declined to assess the sanctions. However, if it wished to impose the sanctions, it was obliged to follow the process outlined in the covenants to which it and the homeowners, including the Bixemans, had agreed. *See, e.g., Drenter v. Duitz*, 883 N.E.2d 1194, 1203 (Ind. App. 2008) (If homeowner wished to build shed, it needed to first obtain approval of plans in accordance with Subdivision's restrictive covenants.). As Hunter's Run did not follow that process, the trial court did not err when it declared the sanction invalid.

### *Slander of Title*[4]

[16] To demonstrate slander of title, one must prove "false statements were made, with malice, and that the plaintiff sustained pecuniary loss as a necessary and

---

[4] In its conclusions of law the trial court said "[d]ue to the invalidity of the lien, [Bixemans'] allegation for [sic] slander of title is moot." (App. at 14.) Immediately afterward in its judgment order it ruled on the slander of title allegation, determining "[t]he liability of Defendant Hunter's Run for its slander of title is DENIED." (*Id*. at 15.) In its Order upon Motion to Correct Errors it stated it "reaffirms its findings, conclusions, and order of April 9, 2014 with respect to [Bixemans'] claim for slander of title." (*Id.* at 10.)

A "moot" question is one "involving no subject matter upon which the court's judgment might operate." *State v. Vore*, 268 Ind. 340, 342, 375 N.E.2d 205, 207 (1978). Despite its statement the allegation of slander of

proximate consequence of the slanderous statements." *Display Fixtures Co., a Div. of Stein Indus. v. R. L. Hatcher, Inc.*, 438 N.E.2d 26, 30 (Ind. Ct. App. 1982). A malicious statement is one "made with knowledge of [its] falsity or with reckless disregard for whether [it is] false." *Holland v. Steele,* 961 N.E.2d 516, 525 (Ind. Ct. App. 2012), *trans. denied.*

[17]   Hunter's Run was notified by Bixeman's attorney that the lien was invalid, yet it refused to release the lien. That demonstrated malice. *See Walsh & Kelly, Inc. v. Int'l Contractors, Inc.*, 943 N.E.2d 394, 399-400 (Ind. Ct. App. 2011) (refusal to release lien after repeated notifications lien was invalid constituted malice)*, trans. denied*. Bixemans were unable to market their property and had to pay their attorney in order to put this matter to rest, which resulted in pecuniary loss. *See Keilbach v. McCullough*, 669 N.E.2d 1052, 1053 n.2 (Ind. Ct. App. 1996) (approval of "attorney fees as the proper measure of damages" in slander of title actions). Having maliciously placed a lien on Bixemans' property, which lien Bixemans allege caused them pecuniary loss, Hunter's Run committed slander of title.[5] *See, e.g., Walsh & Kelly, Inc.*, 943 N.E.2d at 400

title was moot, it appears the trial court did in fact enter judgment on that question in Hunter's Run's favor. We accordingly address whether that ruling was error.

[5] As explained above, we agree with the trial court that the lien was invalid, and the designated evidence shows there is no genuine issue as to whether Hunter's Run committed slander of title. However, the trial court erred when it determined Bixemans' "allegation for slander of title is moot" because the lien was invalid. *See, e.g., Huff v. Jennings*, 459 S.E.2d 886, 890 (S.C. Ct. App. 1995) (discharging lien did not "extinguish any claim for slander of title" and slander of title claim was "not rendered moot by . . . discharge [of] lien."), *reh'g denied, appeal dismissed.*

(though court declared lien invalid, party maliciously asserting lien still liable for slander of title).

[18] We accordingly direct the trial court to enter summary judgment for Bixemans on their slander of title claim and remand for a determination whether Bixemans were damaged by that slander of title and if so, to what extent.

### *Attorney Fees*

Bixemans assert Hunter's Run slander of title entitled them to attorney fees pursuant to Ind. Code § 32-20-5-2. Hunter's Run does not dispute Bixemans' assertion except to note the court made no finding. We accordingly instruct the court on remand to enter findings regarding attorney fees.

## Conclusion

[19] As Hunter's Run did not follow the process agreed to in the Declaration, the sanctions were invalid. However, Bixemans demonstrated slander of title by Hunter's Run invalid lien. Thus, we reverse and remand for the trial court to determine Bixemans' damages, including attorney fees.

[20] We affirm in part, reverse in part, and remand.

Robb, J., and Mathias, J., concur.