


FILED

Mar 12 2025, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Andy Sandoval and The Paradise Properties Land Trust,

*Appellants-Defendants*

v.

Willow Lake Estates Home Owners Association, Inc.,

*Appellee-Plaintiff*

---

March 12, 2025

Court of Appeals Case No.
24A-MF-309

Appeal from the LaPorte Superior Court

The Honorable Jeffrey L. Thorne, Judge

Trial Court Cause No.
46D03-2111-MF-69

---

**Opinion by Judge Tavitas**
Judges May and DeBoer concur.

**Tavitas, Judge.**

# Case Summary

[1] Andy Sandoval and the Paradise Properties Land Trust (collectively "Sandoval") refused to pay periodic assessments imposed by the Willow Lake Estates Home Owners Association ("the HOA"), and the HOA recorded liens against Sandoval's properties for the outstanding amounts. The HOA filed an action to foreclose on the liens and moved for summary judgment. Sandoval claimed that the HOA's failure to hold annual meetings, hold elections for the Board of Directors, propose annual budgets, and perform maintenance in the common areas around his lots rendered the assessments invalid. The trial court granted summary judgment to the HOA, and Sandoval then filed a motion to correct error, which the trial court denied.

[2] Sandoval appeals and argues that the trial court erred because holding annual meetings and preparing a budget are conditions precedent to the HOA levying an assessment. Although we disapprove of the HOA's conduct, we are not persuaded that the assessments are invalid. The HOA demonstrated that it was entitled to summary judgment and that no genuine issues of material fact exist. Accordingly, we affirm the trial court's grant of summary judgment to the HOA and the trial court's denial of Sandoval's motion to correct error.

## Issue

Sandoval raises two issues, which we consolidate and restate as whether the trial court erred by granting the HOA's motion for summary judgment and abused its discretion by denying Sandoval's motion to correct error.

## Facts

Willow Lake Estates, which was created in 1989, is an eighty-acre subdivision located in LaPorte County. The subdivision contains five, approximately two-acre residential lots and approximately seventy acres of common area, which includes a large pond, wooded areas, and trails. The Doris J. Ayres Trust owns one of the residential lots, and Joseph Reyes and his wife Donna own another two lots. Sandoval purchased the final two lots, Lots 4 and 5, in September 2017 and later transferred ownership to the Paradise Properties Land Trust of which he is trustee.

The subdivision is subject to a Declaration of Easements, Covenants, and Restrictions ("the Covenants"), which named the HOA, a nonprofit corporation, as the development's homeowners' association. The Covenants incorporate bylaws ("the Bylaws"), which also govern the HOA. The Covenants provide that each lot owner agrees to pay "[p]eriodic assessments of charges," to be determined by a Board of Directors, and that the HOA may file a lien in the amount of any unpaid assessment. Appellants' App. Vol. II p. 42.

From January 2018 to April 2018, the assessments were $1,300 three times per year for each lot. Beginning in April 2018, the assessments were $1,200 three

times per year. Sandoval paid $2,000 in early 2018, but he has failed to pay any assessments since that time. Since January 2018, the HOA has filed liens against Sandoval's two lots based on Sandoval's refusal to pay periodic assessments.

[7] In July 2020, the HOA filed a complaint for declaratory judgment against Sandoval after Sandoval claimed ownership of thirty-two acres of common area and attempted to create a new road through the common area. In June 2021, the trial court granted the HOA's motion for summary judgment and found that Sandoval was "bound by the covenants and restrictions set forth in the" Covenants and that Sandoval did not "own exclusive rights to a fractional share of the common areas." Appellants' App. Vol. IV p. 49. Sandoval then filed mechanic's liens against the HOA and took actions to impede ingress and egress of the common areas. The trial court ordered Sandoval to vacate the mechanic's liens and take no further action to impede access to the common area. The order further provided: "[Sandoval is] hereby ordered to comply with all of the terms, conditions, requirements and prohibitions set forth in the [Covenants.]" *Id.* at 51.

[8] On November 16, 2021, the HOA filed this action against Sandoval to foreclose the liens. Sandoval filed an answer asserting affirmative defenses and a counterclaim. Sandoval argued that the HOA failed to hold annual meetings, hold elections for the Board of Directors, and prepare annual budgets in accordance with the Covenants and Bylaws and that the failure to conduct

these activities rendered the assessments invalid. Sandoval claimed that he was entitled to damages based on the HOA's failures.[1]

[9] On July 26, 2022, the HOA moved for summary judgment. The HOA's designation of evidence included affidavits from Lester Teichner, an officer of the HOA, and Joseph Reyes, in which they stated that Sandoval had not paid assessments since his $2,000 payment in 2018. The HOA argued that it was entitled to foreclose its liens and collect a judgment against Sandoval in the amount of the unpaid assessments.

[10] Sandoval filed a response and argued that the HOA's obligations to hold annual meetings, hold elections, and prepare annual budgets were "condition[s] precedent" to his requirement to pay assessments and that the HOA's failure to conduct these activities rendered the assessments invalid. Appellants' App. Vol. II p. 130. In his designation of evidence, Sandoval provided an affidavit from himself, in which he stated that he had never received documentation regarding notices of annual meetings, minutes of annual meetings, notices of director elections, or proposed annual budgets and that the HOA failed to produce such documents during discovery upon Sandoval's request for production of documents.

---

[1] Sandoval also claimed that the assessments were invalid based on the HOA's failure to maintain common areas and that Sandoval personally incurred expenses to maintain the common areas.

The HOA then filed a motion to strike Sandoval's affirmative defenses and counterclaim. The trial court held a hearing on the summary judgment motion and motion to strike on June 27, 2023. On July 5, 2023, the trial court issued its order finding no genuine issues of material fact and granting summary judgment in favor of the HOA but denying the motion to strike. The trial court specifically found:

> 12. [Sandoval claims] that a Contract exists between [the HOA] and its members and that [the HOA's] performance of each and every obligation imposed by its BY LAWS, its COVENANTS and Indiana Statutory Law, is a condition precedent to [Sandoval's] obligations to comply, and, in this case, pay assessments.
>
> 13. [Sandoval] failed to establish either the existence of this contractual relationship nor the remedy it asserts in either [the HOA's] COVENANTS or its BYLAWS.
>
> 14. [Sandoval] failed to establish either the existence of this contractual relationship nor the remedy it asserts within the aforementioned Homeowner's Association Act and Indiana Non-Profit Corporation Act.
>
> * * * * *
>
> 16. [Sandoval] failed to establish either the existence of this contractual relationship nor the remedy it asserts by reference to any controlling applicable Indiana Case Law and this Court has been unable to find any such case law support.

Appellants' App. Vol. II p. 18. The trial court ordered Sandoval to pay a judgment in the amount of $39,000 plus the HOA's attorney fees and permitted foreclosure of the liens. Sandoval filed a motion to correct error, which the trial court denied after a hearing. Sandoval now appeals.

## Discussion and Decision

### A. Standard of Review

[12] Sandoval argues that the trial court abused its discretion by granting summary judgment to the HOA and denying Sandoval's motion to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Coronado v. Coronado*, 243 N.E.3d 1121, 1124 (Ind. Ct. App. 2024) (citing *Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 384 (Ind. Ct. App. 2017)). Our review "'necessarily involves review of the underlying order.'" *Id.* (quoting *In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008)).

[13] The underlying order here is the trial court's grant of summary judgment in favor of the HOA. Pursuant to Trial Rule 56(C), the summary judgment movant "is entitled to summary judgment only if the evidence it designates in support of its motion 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 684-85 (Ind. 2024) (quoting

Ind. Trial Rule 56(C)). The purpose of summary judgment is to withdraw issues from the jury only when there are no factual issues for the jury to decide. *Id.* at 685. "Summary judgment is available when the nonmovant cannot prove its claim based on the undisputed evidence[.]" *Id.*

[14] The summary judgment movant invokes the burden of making a *prima facie* showing that there is no issue of material fact and that it is entitled to judgment as a matter of law. *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020). The burden then shifts to the non-moving party which must then show the existence of a genuine issue of material fact. *Id*. On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id*.

[15] "We limit our review to the materials designated at the trial level." *Gunderson v. Ind. Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018). Because the trial court entered findings of fact and conclusions thereon, we also reiterate that findings of fact and conclusions thereon entered by the trial court in granting or denying summary judgment aid our review, but they do not bind us. *In re Supervised Estate of Kent*, 99 N.E.3d 634, 637 (Ind. 2018).

## B. The trial court properly granted the HOA's motion for summary judgment and denied Sandoval's motion to correct error.

[16] The HOA designated evidence that Sandoval failed to pay his assessments as required by the Covenants and requested foreclosure of its liens. In response, Sandoval designated evidence that the HOA failed to hold annual meetings,

hold director elections, and prepare annual budgets as required by the Covenants and Bylaws. Sandoval argued that, as a result of these failures by the HOA, the assessments against him were invalid. The trial court, however, found that Sandoval failed to establish that he was entitled to refuse payment of the assessments as a result of the HOA's actions.

[17] On appeal, Sandoval argues that the assessments were invalid because the HOA failed to prepare annual budgets and follow the procedures for establishing assessments. In support of his arguments, Sandoval relies upon the HOA's Covenants and Bylaws, statutes governing homeowners' associations, and statues governing non-profit corporations. We begin by addressing the statutory authority discussed by the parties.[2]

## 1. Statutory Authority

[18] Sandoval argues that, pursuant to Indiana statutes governing homeowners' associations and non-profit corporations, he was not required to pay the

---

[2] The HOA also argues that Sandoval's arguments are waived because Sandoval failed to file a timely counterclaim raising these issues in the earlier declaratory judgment action between these parties and failed to appeal the final order in that action. "Generally speaking, res judicata operates 'to prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies.'" *In re Eq.W.*, 124 N.E.3d 1201, 1208 (Ind. 2019) (quoting *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013)). "This doctrine applies 'where there has been a final adjudication on the merits of the same issue between the same parties.'" *Id.* (quoting *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014)). Although there has been prior litigation between these parties, the issue in that action was Sandoval's claim that he owned thirty-two acres of the common area in the subdivision. Although the trial court found that Sandoval was subject to the Covenants, the designated evidence does not suggest that the HOA's failure to hold annual meetings or prepare a budget was a subject of the prior litigation. Accordingly, we do not find Sandoval's arguments waived.

assessments because the HOA failed to prepare an annual budget and hold annual meetings. When interpreting a statute, we "read the words in their plain and ordinary meaning." *Spells v. State*, 225 N.E.3d 767, 772 (Ind. 2024). "We presume the General Assembly intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id*.

[19] In general, homeowners' associations are governed by Indiana Code Article 32-25.5, which was enacted in 2009. Sandoval relies upon Indiana Code Section 32-25.5-3-3(a), which requires homeowners' associations to "prepare an annual budget." This section, however, only applies to (1) homeowners' associations "established after June 30, 2009"; or (2) homeowners' associations established before this date that have chosen to be subject to Indiana Code Article 32-25.5. Ind. Code § 32.25.5-1-1. Here, the HOA was incorporated in 1989, and nothing in the designated evidence indicates that it has chosen to be subject to the Article. Indiana Code Section 32-25.5-3-3(a), thus, does not apply.[3]

---

[3] Under Indiana Code Section 32-25.5-1-1(b), certain provisions of this article do apply, even to homeowners' associations that were established before 2009 and have not chosen to be subject to the article, including:

    (1) IC 32-25.5-3-3(g) through IC 32-25.5-3-3(m) (inspection of records)

    (2) IC 32-25.5-3-9 (amendments to governing documents)

    (3) IC 32-25.5-3-10 (votes by proxy)

    (4) IC 32-25.5-3-11 (meetings without a quorum, enforcement of governing documents)

    (5) IC 32-25.5-4 (actions by the Attorney General)

    (6) IC 32-25.5-5 (grievance resolution).

This HOA is, thus, subject to these listed provisions.

[20] Nonprofit corporations are governed by Indiana Code Article 23-17, and the HOA's Covenants specifically provide that the HOA is governed by the "Indiana Not-For Profit Corporation [sic]." Appellants' App. Vol. IV p. 45. Sandoval relies upon Indiana Code Section 23-17-10-1(a), which provides that "[a] corporation with members must hold a membership meeting annually at a time stated in or fixed in accordance with the bylaws." Subsection (i)(1), however, provides that "[t]he failure to hold an annual or a regular meeting at a time stated in or fixed in accordance with a corporation's bylaws does not . . . [a]ffect the validity of any corporate action." I.C. § 23-17-10-1(i)(1).

[21] Sandoval argues that Indiana Code Section 23-17-10-1(i)(1) does not apply here because it only gives the HOA "flexibility on **when, not whether,** to hold annual or regular meetings." Appellants' Br. p. 22 (emphasis in original). We, however, are persuaded that the legislature's intent was to assure the continuation of corporate governance despite the procedural lapse in failing to hold meetings, not merely failing to hold the meeting on the required date. Pursuant to Indiana Code Section 23-17-10-1(i)(1), the HOA's failure to hold annual meetings does not affect the validity of the assessments.

[22] Our interpretation is supported by Indiana Code Section 23-17-10-3, which provides that shareholders may petition a court to "order a meeting to be held and may fix the time and place of the meeting, which shall be conducted in accordance with the corporation's articles of incorporation and bylaws[.]" Read together, these statutes suggest that the remedy for a corporation's failure to a hold a meeting is not to invalidate the corporate action but instead to

compel the corporation to hold the required meeting. Under the relevant statutes, the HOA's failure to hold annual meetings, thus, does not render the assessments invalid.

[23] Sandoval also compares himself to a minority shareholder of a closely-held corporation and argues that he has no legal remedy against the HOA's failures except withholding payment of his assessments. We disagree that Sandoval had no legal remedies due to the HOA's failure to hold annual meetings and prepare budgets. Remedies available to Sandoval included, but were not limited to, an action to compel an annual meeting under Indiana Code Section 23-17-10-3 and other remedies under Indiana Code Article 32-25.5. Accordingly, Sandoval's argument fails.

## 2. Covenants and Bylaws

[24] Next, Sandoval argues that the HOA's governing documents required it to hold annual meetings and prepare an official budget and that the HOA's failure to do so was a condition precedent to imposing assessments. "'In modern usage, the term covenant generally describes promises relating to real property that are created in conveyances or other instruments.'" *Williams v. Ind. Rail Rd. Co.*, 33 N.E.3d 1043, 1052 (Ind. Ct. App. 2015) (citing *Columbia Club, Inc. v. American Fletcher Realty Corp.*, 720 N.E.2d 411, 417 (Ind. Ct. App. 1999), *trans. denied*), *trans. denied*.

> Covenants relating to real property are a species of express contract and are generally construed in the same manner as other written contracts. *Villas W. II of Willowridge Homeowners Ass'n,*

*Inc. v. McGlothin*, 885 N.E.2d 1274, 1278 (Ind. 2008) (a restrictive covenant is an express contract between grantor and grantee that restrains the grantee's use of his land), *cert. denied* (2009). Moreover, the bylaws of a nonprofit corporation, such as an HOA, constitute a contract between the corporation and its members, and among the members themselves. *Vill. Pines at the Pines of Greenwood Homeowners' Ass'n, Inc. v. Pines of Greenwood, LLC*, 123 N.E.3d 145, 157 (Ind. Ct. App. 2019). If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016)*, trans. denied.*

*Warriner Invs., LLC v. Dynasty Homeowners Ass'n, Inc.*, 189 N.E.3d 1119, 1124 (Ind. Ct. App. 2022).

[25] The Covenants here provide for the creation of a Board of Directors to be "elected by Members[]" in accordance with the governing documents. Appellants' App. Vol. IV p. 45. The Board of Directors "shall direct and administer the Common Areas in accordance with the terms and provisions of" those documents. *Id*. The Board of Directors is also responsible for determining and collecting periodic assessments.

> The Board of Directors shall fix the length of [the] period applicable to periodic assessments and the amount of the periodic assessment may be fixed in advance for up to 12 calendar months. The aggregate amount of such periodic assessments fixed at any time shall be the amount determined by the Board of Directors to be required during the time for which the assessments are fixed for carrying out the purposes of such assessments, together with any reserves which the Board of Directors determines to be necessary or desirable to provide for anticipated expenditures for such purposes.

*Id.* at 42. The periodic assessments reflect the lot owners' proportionate share of "common area expenses for routine and special maintenance and upkeep of the entire property[.]" *Id.* Under the Covenants, failure to pay assessments results in a "continuing lien." *Id.*

[26] Regarding annual meetings, the Bylaws provide:

> **An annual meeting of the members shall be held** on the Wednesday following the first Tuesday in June in each year . . . **for the purpose of electing Directors** and for the transaction of such other business as may come before the meeting. If such day be a legal holiday, the meeting shall be held at the same hour on the next succeeding business day. If the election of Directors shall not be held on the day designated herein for any annual meeting, or at any adjournment thereof, the Board of Directors shall cause the election to be held at a special meeting of the members called as soon thereafter as conveniently may be. . . .

Appellants' App. Vol. IV p. 55. Written notices of meetings must be "delivered" to each voting member "not less than ten nor more than forty days before" the meeting. *Id.* "[M]inutes of the meetings of the members" shall be taken and retained as records. *Id.* at 60; *see also id.* at 61 ("The Association shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its members [and] Board of Directors[.]").

[27] Although the Covenants clearly contemplate a financial basis for the assessments, the Covenants do not expressly require the preparation of a physical budget, as Sandoval contends. And although the Bylaws clearly require the HOA to hold annual meetings, the Covenants and Bylaws do not

allow a homeowner to refuse to pay assessments based on the HOA's failure to conduct these activities.

[28] In support of his argument, Sandoval relies on *Bixeman v. Hunter's Run Homeowners Ass'n of St. John, Inc.*, 36 N.E.3d 1074 (Ind. Ct. App. 2015), which we find distinguishable. In *Bixeman*, a homeowners' association imposed a $250 sanction on the Bixemans for an alleged violation of the covenants. The homeowners' association gave notice of a hearing on the violation to be held in seven days. The covenants, however, expressly provided that, before the association could impose a special assessment as a sanction, the homeowners' association was required to send a written demand to cease and desist regarding the violation, provide ten days to cure the violation, and, if the violation was not cured, to send notice of a hearing to be held not less than ten days after the hearing notice.

[29] On appeal, we held that the special assessment in *Bixeman* was invalid because the homeowners' association failed "to follow the process outlined in the covenants[.]" *Id*. at 1078. Here, unlike in *Bixeman*, neither the Covenants nor the Bylaws expressly require that an annual meeting be held or that annual budgets be prepared before the HOA can levy assessments. Accordingly, we do not find *Bixeman* to be persuasive here.

[30] Rather, here, the HOA's governing documents do not provide that annual meetings or preparation of a budget are a prerequisite to levying periodic assessments. Nor do they permit a homeowner to withhold assessments based

on the HOA's failure to conduct these activities. The holding of an annual meeting or preparation of a budget is not a condition precedent under the HOA's governing documents to levy a periodic assessment.[4]

[31] Accordingly, the HOA's failure to follow the governing documents does not establish a genuine issue of material fact. *See*, *e.g.*, *Feather Trace Homeowners Ass'n, Inc. v. Luster*, 132 N.E.3d 500, 503 (Ind. Ct. App. 2019) (holding that "abrogation of homeowners' association dues and assessments is [not] the appropriate remedy for an owner's dissatisfaction with the way the HOA is performing or the conditions or quality of the neighborhood and its amenities" and noting that homeowners have remedies available other than refusing to pay dues); *CSL Cmty. Ass'n, Inc., v. Meador*, 973 N.E.2d 597, 601 (Ind. Ct. App. 2012) (holding that abrogation of homeowner's "obligation to pay dues and assessments" was "not a remedy" for homeowners' association's failure to maintain amenities), *trans. denied*.

[32] The HOA's failure to hold annual meetings and prepare a budget, thus, does not excuse Sandoval from paying periodic assessments. The HOA demonstrated that it was entitled to judgment as a matter of law and that no genuine issues of material fact exist. Accordingly, the trial court properly

---

[4] Although the holding of annual meetings and preparation of an official budget are not conditions precedent to levying assessments, these functions are required by the HOA's governing documents and the relevant statutes. We direct the HOA to comply with these governing documents and statutes in the future.

granted the HOA's motion for summary judgment and did not abuse its discretion by denying Sandoval's motion to correct error.

## Conclusion

[33] The trial court properly granted summary judgment to the HOA and did not abuse its discretion by denying Sandoval's motion to correct error. Accordingly, we affirm.

[34] Affirmed.

May, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANTS

Connor H. Nolan
Harris Welsh & Lukmann
Chesterton, Indiana


ATTORNEY FOR APPELLEE

Bradley J. Adamsky
Drayton, Biege, Sirugo & Elliott, LLP
LaPorte, Indiana